UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>        Plaintiff,<br><br>v.<br><br>CITIZENS BANK, N.A.,<br>        Defendant. | :<br>:<br>:<br>:<br>:<br>:   C.A. No. 19-362WES<br>:<br>:<br>: |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This is the second time that the Equal Employment Opportunity Commission ("EEOC"), has asked this Court to bar Defendant Citizens Bank, N.A., ("Citizens") from using the results of a Fed. R. Civ. P. 35 examination to defend the claim that Citizens violated rights of its former employee and "charging party," William Lescault, pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*. In the first go-round, the Court rejected, *inter alia*, the EEOC's unfounded argument that courts lack the power to order a Fed. R. Civ. P. 35 examination in cases brought by the EEOC, no matter how unfair the denial of such discovery might be to the defendant. ECF No. 47, objection overruled, ECF No. 53. Now, with the examination completed, the EEOC asks the Court to exclude its results in their entirety as a Fed. R. Civ. P. 37(b)(2)(A) sanction because of what the EEOC contends is a violation of a Court-ordered condition. ECF No. 57. Because the Court finds no breach of a clear Order, the EEOC's sanctions motion is denied.

I.      **FACTUAL BACKGROUND**

The genesis of the current dispute is the Court's ruling on the "manner [and] conditions . . . of the examination." Fed. R. Civ. P. 35(a)(2)(B). As relevant here, Citizens (not the EEOC)

asked the Court to order that no video or audio recording of the examination be permitted, that Mr. Lescault must be alone with no interruptions (except for comfort breaks), and that the examination must be conducted outside of the presence of the attorneys for the parties. These requests were supported by the declaration of Citizens' expert psychiatrist, Dr. Harold J. Bursztajn. ECF No. 33-4 ¶ 17 ("I will personally administer all tests. In addition, to facilitate validity, all testing will be conducted outside of presence of counsel or audio or video recordings."). The EEOC did not object to these requirements and the Court adopted Citizens' approach, substantively ruling in relevant part that:

> the examination [be conducted] remotely by Zoom or another remote platform, which will permit Mr. Lescault to participate from wherever he would be comfortable, provided that he must be alone during the examination and no audio or video recording may be created of the examination . . . with comfort breaks as needed . . . .

ECF No. 47 at 18. In following the guidance from Dr. Bursztajn, this aspect of the Court's ruling is consistent with the proposition that it is the medical expert whose professional judgment should control the "manner [and] condition" of the examination. Johnson v. Fed. Bureau of Prisons, 16 CV 3919 (AMD) (CLP), 2017 WL 5197143, at *4 (E.D.N.Y. Nov. 9, 2017) ("Such determinations are best left, whenever possible, to the parties in consultation with their respective medical professionals rather than judges."). However, in the Conclusion to my memorandum and order, this aspect of the ruling was summarized with words that (as I now find), read with the benefit of hindsight, muddy the substantive ruling in that they more broadly state: "[t]he attendees at the examination are limited to Mr. Lescault and Dr. Bursztajn."[1] ECF No. 47 at 20.

---

[1] The wording of this overly broad summary of the substantive ruling was used because the Court did not anticipate that, depending on what test was chosen, Dr. Bursztajn might need the assistance of a facilitator, who, while not participating on the Zoom, would be in the room to transcribe Mr. Lescault's answers. Nor did the Court anticipate the possibility that Dr. Bursztajn might need technical assistance with his computer. Had these issues been raised,

2

In overruling the EEOC's objections to my Fed. R. Civ. P. 35 determinations, the District Court confirmed that my ruling on "limited attendees," *inter alia*, was a sufficient description of the manner and conditions of the testing as required by Fed. R. Civ. P. 35. ECF No. 53 at 5. After the Court ordered that the Fed. R. Civ. P. 35 examination must proceed, counsel for Citizens, appropriately and in good faith (as I find), advised Dr. Bursztajn that the Court's order "limited attendees of the examination to Mr. Lescault and [him]self." ECF No. 60-3 ¶ 8.

One week before the date agreed upon for the examination, Dr. Bursztajn selected the test he planned to use for his examination. Because the selected test required the administration of 175 true/false questions, consistent with his "routine practice" to ensure the integrity of the answers to the chosen test questions, Dr. Bursztajn asked one of his assistants to act as transcriptionist. ECF No. 60-3 ¶¶ 6-7. This individual was to be off camera, with an audio feed only, to record the true/false answers so Dr. Bursztajn, as the examiner, could maintain eye contact and observe Mr. Lescault.[2] ECF No. 57-1 at 5-6. Dr. Bursztajn understood – an understanding that I find to be reasonable – that the Court's order on "limited attendees" did not bar him from relying on an off-screen transcriptionist listening to the audio feed to mark true or false on the answer sheet. ECF No. 60-3 ¶ 9.

---

my ruling would have expressly permitted Dr. Bursztajn to rely on whatever assistance was appropriate in his professional judgment. See Tirado v. Erosa, 158 F.R.D. 294, 300, n.14 (S.D.N.Y. 1994) (ordering that examination shall proceed with no one present except plaintiff and examining psychiatrist, but noting, "[i]f it is the examining psychiatrist's normal practice to have a nurse or assistant present during any portion of the examination of a female patient, nothing herein is to be construed as prohibiting that procedure in this case").

[2] In support of its motion for sanctions, the EEOC submitted a document entitled "Telepractice and Questionnaires or Rating Scales," ECF No. 57-5 ("Testing Protocol"), which is pertinent because it is applicable to the specific test Dr. Bursztajn administered. This Testing Protocol does not support the EEOC's argument. To the contrary, it confirms the appropriateness of Dr. Bursztajn's request that the Court order that audio and video recording may not be conducted. Id. at 5 ("individuals must agree that they will not record (audio or visual)"). It further confirms that the examinee's (that is, Mr. Lescault's) environment should be "free from audio and visual distractions," but that the examiner (that is, Dr. Bursztajn) may have an assistant who remains off-camera. Id. at 4-5, 8.

3

On the morning of the day set for the examination, EEOC's counsel emailed counsel for Citizens: "[t]o confirm, only Mr. Lescault and Dr. Bursztajn will be on the Zoom call. If anyone else intends to be present, let us know." ECF No. 57-4 at 5. Unaware of Dr. Bursztajn's plan to use a transcriptionist off-screen with an audio feed to hear and record the true/false answers and focused on the intent of the Court's ruling (ensuring that Mr. Lescault would be alone and barring the attendance of attorneys), Citizens' counsel responded, "I can confirm that only Dr. Bursztajn and Mr. Lescault will be on the Zoom . . . we will not be involved." Id. at 4.

Before beginning the examination, consistent with the Testing Protocol, ECF No. 57-5 at 7, Dr. Bursztajn explained to Mr. Lescault that someone in the room would transcribe his answers. ECF No. 60-1 at 5 ("My understanding was, at the very beginning I said that, you know, there was someone else that was going to be transcribing."); Id. at 7 ("I did – definitely mentioned that there was a transcriber in the room with me."). In addition to the assistance of the transcriptionist, Dr. Bursztajn also needed technical assistance with his computer during the examination. ECF No. 60-3 ¶ 10. This was provided by another of his assistants, who entered the room for that purpose. Id.

At some point during the examination, Mr. Lescault asked for a bathroom break, which was consistent with the Court's Order permitting him "comfort breaks." ECF No. 47 at 20. However, Mr. Lescault actually used the time to call counsel for the EEOC to report that he had heard a sound, causing him to suspect that someone else was in the room.[3] See ECF No. 57-4 at 1. During the call, EEOC's counsel advised Mr. Lescault to ask Dr. Bursztajn if there was

---

[3] I do not find that Mr. Lescault's call to the EEOC's counsel in the middle of the Fed. R. Civ. P. 35 examination amounted to a direct violation of the Court's Order that he might take comfort breaks, but that the EEOC's counsel could not be present. However, it is worth noting, as Citizens observed in its brief, that it is a far closer call whether Mr. Lescault's conduct was a breach of the Court's Order than that Dr. Bursztajn violated the Order through his use of an off-screen transcriptionist or a computer assistant. Cf. Lemings v. Taylor, CIVIL ACTION NO. 18-768-BAJ-RLB, 2019 WL 11690210, at *3 (M.D. La. July 9, 2019) ("Should there be any breaks in the examination, Mr. Lemings and counsel may not confer in any manner.") (emphasis in original).

4

another person present and, as long as such a person was not an attorney, "to just continue the exam"; that is, EEOC's counsel opted not to timely (during the examination) bring the concern that is the foundation for its motion for sanctions to the attention of Citizens or to present the matter for clarification to the Court.[4] Id. After this conversation with EEOC's counsel, Mr. Lescault returned to the examination. In response to Dr. Bursztajn's question, he admitted he had talked to someone during the break but refused to say who and what he discussed; he also asked (per the legal advice from EEOC's counsel) if someone had been present during the examination. ECF No. 60 at 7. Because he had already told Mr. Lescault about the transcriptionist, Dr. Bursztajn told Mr. Lescault that someone had entered to give him technical assistance with the computer. ECF No. 60-3 ¶ 11; see ECF No. 60-1 at 5, 7-8. After the examination was completed, counsel for EEOC advised counsel for Citizens of the call by Mr. Lescault and what was discussed, including the advice that EEOC gave him, which was to continue as long as the person present was not an attorney. ECF NO. 57-4 at 57-4 at 1.

In his report, Dr. Bursztajn described each of these "atypical events," consistent with the recommendation of the Testing Protocol. ECF No. 57-5 at 8. Regarding Mr. Lescault's conduct in asking for a bathroom break, instead making a call to the EEOC's counsel, refusing to explain what he had done or why, but asking if someone had been in the room, Dr. Bursztajn noted the incident and opined that it reflected a mistrustful attitude and was consistent with an adversarial

---

[4] The EEOC's interaction with Mr. Lescault during the Fed. R. Civ. P. 35 examination reflects that, as of then, the EEOC was correctly interpreting the Court's Order as barring counsel for either side from attending the examination but that it did not understand that the Order barred Dr. Bursztajn from having off-screen assistance with his computer or with transcription of test answers. Further, the EEOC's advice to Mr. Lescault makes clear that it was aware that there might be another person in the room and chose to do nothing but rather to allow the examination to proceed as long as the person present was not an attorney. Viewed through this lens, the Court alternatively finds that the EEOC's sanctions motion is denied because it waived the argument that the presence of a non-attorney to assist Dr. Bursztajn violated the Order by failing timely to raise it as soon as the issue was brought to its attention while the examination was still in progress. Cf. Fed. R. Civ. P. 32(d) (objections to matters that could be cured during deposition are waived unless timely made during the deposition).

approach to the examination. ECF No. 59 at 9-10. During his deposition, Dr. Bursztajn agreed that it was possible that Mr. Lescault had not understood or remembered the advisory about a transcriptionist being present and that his suspicion about hearing someone in the room might have been well founded and led Mr. Lescault not to trust Dr. Bursztajn. ECF No. 57-1 at 13-14. However, Dr. Bursztajn explained further that Mr. Lescault's suspicion about someone being in the room "wasn't a substantial factor, as far as my sense of an overwhelming mistrust for me," as well as that his diagnostic opinion regarding Mr. Lescault's mistrust was corroborated by his clinical analysis of Mr. Lescault's test responses and his overall attitude throughout the examination, not just during this incident. Id. at 14.

The EEOC now argues that the entry into the room of an assistant to help Dr. Bursztajn with computer issues and the off-camera presence in the room of the transcriptionist listening to the audio feed to record the true/false answers constitute two clear violations of the Court's "unambiguous" Order that "attendees at the examination are limited to Mr. Lescault and Dr. Bursztajn." ECF No. 47 at 20. Invoking Fed. R. Civ. P. 37(b)(2)(A) and the Court's inherent power, the EEOC contends that this was such egregious conduct and that it caused such significant prejudice that Citizens should be sanctioned by exclusion of both the examination report and all testimony based on the examination.

**II.    APPLICABLE LAW**

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides that a court may impose sanctions on a disobedient party for not obeying a discovery order:

> If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule . . . 35, . . . the court . . . may issue further just orders. They may include the following: . . . prohibiting the disobedient party . . . from introducing designated matters in evidence.

6

Fed. R. Civ. P. 37(b)(2)(A)(ii); see Alifax Holding SpA v. Alcor Sci. Inc., C.A. No. 14-440 S, 2018 WL 11371604, at *2 (D.R.I. Oct. 16, 2018).  The imposition of sanctions is not mandatory: "Rule 37(b)'s permissive language gives the district court discretion *not* to impose sanctions as well."  Benitez-Allende v. Alcan Aluminio do Brasil, S.A., 857 F.2d 26, 32-33 (1st Cir. 1988) (emphasis in original).  While the court has discretion in choosing an appropriate sanction, "the punishment must approximately fit the crime," and a sanction will be overturned if it is not justified.  Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 80 (1st Cir. 2009) (addressing sanctions pursuant to Fed. R. Civ. P. 37(c)).  The focus of Fed. R. Civ. P. 37(b)(2)(A) is on the conduct of the "disobedient party" that has failed to "provide or permit discovery."

The Court also may impose sanctions through the exercise of its inherent power.  United States ex rel. Nargol v. DePuy Orthopaedics, Inc., CIVIL ACTION No. 12-10896-MPK, 2022 WL 203654, at *4 (D. Mass. Jan. 24, 2022).  "[I]f in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."  Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991).  In that regard, "[a] court may award sanctions upon finding that a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  F.A.C., Inc. v. Cooperativa De Seguros De Vida De P.R., 563 F.3d 1, 6 (1st Cir. 2009) (quoting Chambers, 501 U.S. at 45-46).  "Because of its potency, 'a court's inherent power . . . 'should be used sparingly and reserved for egregious circumstances.'"  Id. (quoting Whitney Bros. Co. v. Sprafkin, 60 F.3d 8, 13 (1st Cir. 1995)); see Chambers, 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion.").

Two "conditions precedent" must exist before a court may "engag[e] the gears of the rule's sanction machinery": (1) a clear court order must be in effect, and (2) the order must be

violated. Alifax Holding SpA, 2018 WL 11371604, at *2 (quoting R.W. Int'l Corp. v. Welch Foods, Inc., 937 F.2d 11, 15 (1st Cir. 1991)); see also Astro-Med, Inc. v. Plant, CA 06-533 ML, 2008 WL 11387142, at *8 (D.R.I. Jan. 3, 2008). The order must be "sufficiently explicit" – "imperfect compliance with an indefinite directive should not yield strict discipline." Alifax Holding SpA, 2018 WL 11371604, at *2; see An-Port, Inc. v. MBR Indus., Inc., 772 F. Supp. 1301, 1306 (D.P.R. 1991) (party "exposed itself to Rule 37(b) sanctions" when it "chose to ignore and disobey" a "clear, unequivocal and unambiguous discovery order") (citing R.W. Int'l Corp., 937 F.2d at 20 (in absence of clear discovery order, no foundation for sanction under Rule 37(b)(2))). The Court has "considerable leeway" in policing any uncovered noncompliance, Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003), and does so in light of "the totality of the attendant circumstances." Torres-Vargas v. Pereira, 431 F.3d 389, 392 (1st Cir. 2005). Such circumstances include (1) the willfulness or bad faith of the non-complying party; (2) the prejudice to the opposing party; (3) whether the procedural history indicates protracted inaction or deliberate delay; and (4) the disregard of earlier warnings of the consequences of the misconduct in question. In re Selected Somersworth Bank Cases, 148 F.R.D. 1, 4 (D. Me. 1993) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 640 (1976); Velazquez–Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1077 (1st Cir. 1990)). If warranted, sanctions may "run the gamut of severity from reasonable attorneys' fees or expenses to dismissal of the action in whole or in part." Alifax Holding SpA, 2018 WL 11371604, at *2 (citing Torres-Vargas, 431 F.3d at 393).

To interpret the clarity and meaning of a discovery order alleged to have been transgressed, deference is afforded to "the special role played by the writing judge in elucidating the meaning and intendment of an order which [she] authored." Martha's Vineyard Scuba

Headquarters, Inc. v. Unidentified, Wrecked & Abandoned Steam Vessel, 833 F.2d 1059, 1066-67 (1st Cir. 1987). If a party's interpretation of the terms of an Order "[i]s reasonable and provided a good faith basis to withhold such materials, . . . sanctions are unwarranted." Alifax Holding SpA, 2018 WL 11371604, at *3.

### III. ANALYSIS AND FINDINGS

Based on my findings in reliance on the facts presented by the parties and on my interpretation of the "meaning and intendment" of my Order,[5] Martha's Vineyard Scuba Headquarters, Inc., 833 F.2d at 1066-67, I find that, during the Fed. R. Civ. P. 35 examination, Dr. Bursztajn acted consistently with his reasonable interpretation of the Court's Order, as well as with his professional opinion regarding best practice for performing the Court-ordered examination, particularly for ensuring the accuracy of the subject's test answers. Alifax Holding SpA, 2018 WL 11371604, at *3. I do not find that Citizens is a "disobedient party," nor do I find that it "fail[ed] to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2), nor do I find that it or its counsel engaged in any intentional misconduct or bad faith conduct (never mind a pattern of such conduct) with respect to the Fed. R. Civ. P. 35 examination or otherwise.

At worst, I find that there may have been confusion arising from the unintended ambiguity caused by the potential inconsistency between the Court's actual ruling ("Mr. Lescault . . . must be alone . . . and no audio or video recording may be created," ECF No. 47 at 18) and the ambiguous phrase ("attendees at the examination are limited to Mr. Lescault and Dr. Bursztajn," ECF No. 47 at 20) in the Conclusion of the Court's decision. The former phraseology is consistent with settled law, Erdahl v. Liberty Life Assur. Co. of Bos., No. 12-

---

[5] At bottom, the "meaning and intendment" of my Order was that the Fed. R. Civ. P. 35 examination should be conducted by Dr. Bursztajn, with the manner and conditions consistent with Dr. Bursztajn's professional judgment, and that Mr. Lescault must submit to it. No part of the Order was meant or intended to prevent Dr. Bursztajn from procuring assistance of the sort that the EEOC is now challenging.

9

298L, 2013 WL 5838676, at *11 (D.R.I. Oct. 30, 2013) (case consensus holds that examinee may not have recording or third party observer at Rule 35 examination), while the latter is language that with hindsight could be incorrectly and inappropriately interpreted as barring Dr. Bursztajn's getting any assistance – either with his computer or with transcribing the 175 true/false answers – no matter how necessary to the completion of the Court-ordered examination.[6]  However, I do not find that this potential for confusion "tainted" the examination as the EEOC argues.  Rather, I find that any potential for confusion may readily be addressed at trial.  That is, Mr. Lescault may testify that, despite the pre-examination advisory that there would be a transcriptionist in the room, he did not understand and was on edge because of his suspicion about a person in the room.  Similarly, Dr. Bursztajn can be cross examined (as he was during his deposition) about the impact of Mr. Lescault's potentially well-founded suspicion about a person in the room on his professional opinions.  See Cabana v. Forcier, 200 F.R.D. 9, 12 (D. Mass. 2001) ("any concerns with distortions or inaccuracies by the examining psychiatrist can be addressed through traditional methods of impeachment and cross-examination") (quoting Baba-Ali v. City of New York, No. 92CIV.7957(DAB)(THK), 1995 WL 753904, at *3 (S.D.N.Y. Dec. 19, 1995)).

With no violation of a clear discovery order, no "disobedient party" to be sanctioned and a complete absence of bad faith, vexatiousness and wantonness by Citizens, the Court is not required to sift through the many sanctions cases that the EEOC has cited.[7]  The EEOC's motion for sanctions is denied.

---

[6] To be clear, I do not so interpret the words that I used in my Order.  Further, if the EEOC had timely asked for clarification (when Mr. Lescault brought the concern to its attention during the examination), I would have ordered that such assistance was permitted.  See n.2 supra.

[7] While not necessary to this decision, the Court observes that, assuming arguendo a clear Order was violated, the EEOC did not cite any case supporting the sanction that the EEOC requests.  The EEOC has cited cases supporting the exclusion of an expert report based on a party's failure to comply with the requirements of Fed. R. Civ. P.

IV.     CONCLUSION

Plaintiff EEOC's Motion for Sanctions for Defendant's Violation of the Court's Rule 35 Orders (ECF No. 57) is denied.


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 15, 2022

---

26(a)(2) or breach of a scheduling order set pursuant to Fed. R. Civ. P. 16, but these are not applicable here.  E.g., Gonzalez-Rivera v. Centro Medico Del Turabo, Inc., 931 F.3d 23, 29 (1st Cir. 2019); Samaan v. St. Joseph Hosp., 670 F.3d 21, 37 (1st Cir. 2012).  The EEOC also relies on cases reflecting serious misconduct or a pattern of noncompliance by a party, which is entirely missing in this case.  E.g., Torres-Vargas v. Pereira, 431 F.3d 389, 393 (1st Cir. 2005); Damiani v. R.I. Hosp., 704 F.2d 12, 17 (1st Cir. 1983).  As it conceded at the hearing, the EEOC cited no case where the sanction of exclusion of an expert report was imposed due to the expert's noncompliance with a clear Order setting the manner and conditions for the Fed. R. Civ. P. 35 examination.  Nor was the Court able to find such a case.