UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | : | |
| OPPORTUNITY COMMISSION, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 19-362WES |
| | : | |
| CITIZENS BANK, N.A., | : | |
|     Defendant. | : | |

**REPORT AND RECOMMENDATION REGARDING CITIZENS'
MOTION FOR SUMMARY JUDGMENT**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This enforcement action is brought by the Equal Employment Opportunity Commission ("EEOC") against Citizens Bank, N.A., ("Citizens") on behalf of a charging party, Citizens' former employee, William Lescault. Until he resigned on April 23, 2018, Mr. Lescault had been employed at Citizens since 2009 largely working in its Call Center. Since 2015, he had been employed as an "On-Line Banking Service Advisor" fielding escalated telephone calls from Citizens customers. Based on the stress caused by these calls, the EEOC contends that Mr. Lescault became disabled due to anxiety that prevented him from performing an essential function of his job – dealing with Citizens' customers on the telephone – and that Citizens violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*., because it refused Mr. Lescault's request for the reasonable accommodation of job reassignment (to any available position for which he was qualified that did not require telephone contact with customers) despite the availability of appropriate vacant positions and terminated the interactive process, resulting in Mr. Lescault's constructive discharge. Citizens disputes whether and the degree to which Mr. Lescault suffered from disabling anxiety and contends that a fact finder could conclude that he was trying to manipulate Citizens into offering him another position. It

further argues that, whether or not Mr. Lescault was disabled by anxiety, it accepted his claim of disability at face value, declined to offer reassignment, but complied with the ADA by offering the alternative reasonable accommodation of remaining on leave to continue treatment. Citizens also argues that it expressed its willingness to continue the discussion of what accommodation would be reasonable, when Mr. Lescault abruptly resigned to take another position, thereby terminating the interactive process.

Now pending before the Court are Citizens' motion for summary judgment (ECF No. 62), the EEOC's motion for partial summary judgment (ECF No. 66) and the EEOC's motion to exclude the testimony of Citizens' expert, Dr. Harold Bursztajn, pursuant to <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579 (1993) (ECF No. 69). All three motions have been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(B). Having reviewed the parties' submissions, including all of the attached materials,[1] and considered their arguments, I recommend that all three be denied. This report and recommendation addresses only the first of the three, Citizens' motion for summary judgment. ECF No. 62. The other two motions are separately addressed in two more reports and recommendations, each of which will issue shortly.

I.     **Summary of Citizens' Motion for Summary Judgment**

Citizens' motion for summary judgment (ECF No. 62) is narrowly focused on three issues. It argues that the undisputed facts establish that (1) it offered Mr. Lescault the reasonable accommodation of remaining on leave to continue mental health treatment, the sufficiency of which is presumed because it was one of two alternative accommodations proposed by his mental health provider, as well as that it expressed its willingness to resume the interactive process once Mr. Lescault was able to return to work; (2) instead of continuing to engage in the

---

[1] Collectively, the motions are supported by more than two thousand pages of material.

interactive process, Mr. Lescault abruptly resigned; and (3) in light of the offer of the alternative reasonable accommodation of a leave to continue mental health treatment, Citizens did not constructively discharge Mr. Lescault in that his working conditions did not become onerous, abusive or unpleasant as to compel him to resign. Contending that there is no trial-worthy factual dispute as to each of these propositions, Citizens argues that the EEOC's ADA claim fails as a matter of law. Citizens asks the Court to enter judgment in its favor terminating this case.

The EEOC counters with evidence that it argues is more than sufficient to establish trial-worthy factual disputes regarding each of these propositions. Therefore, it asks the Court to deny the motion for summary judgment.

## II.     Factual Background Pertinent to Citizens' Motion for Summary Judgment[2]

On February 15, 2018, Mr. Lescault was afforded a paid leave of absence due to his claim of anxiety disorder,[3] supported by the diagnosis of a nurse practitioner (Nurse Casey Williams[4]), pursuant to Citizens' short-term disability policy. Citizens SUF ¶¶ 15, 18, 20, 22; EEOC SUF ¶ 92. Citizens' case file designated this leave as a Family and Medical Leave Act

---

[2] In compliance with DRI Local Rule 56(a), the parties have presented their Statements of Disputed and Undisputed Facts. For the Citizens' summary judgment motion, these are cited as follows: Citizens Statement of Undisputed Facts (ECF No. 63) ("Citizens SUF ¶ __"); EEOC Statement of Disputed Facts (ECF No. 78) ("EEOC SDF ¶ __"); EEOC Statement of Undisputed Facts (ECF No. 79) ("EEOC SUF ¶ __"); Citizens Statement of Disputed Facts (ECF No. 82) ("Citizens SDF ¶ __"). Authenticating certain documents for Citizens are two declarations of Attorney Geoffrey Millsom, cited as Millsom Dec. I (ECF No. 64) and Millsom Dec. III (ECF No. 83). Authenticating certain documents for the EEOC is the declaration of Attorney Daniel Seltzer (ECF No. 80). The factual background in the text is controlled by the requirement that all facts and inferences must be interpreted in the light most favorable to the non-moving party. Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000). For this motion, that is the EEOC.

[3] For purposes only of its motion for summary judgment, Citizens assumes that Mr. Lescault had disabling anxiety. ECF No. 62-1 at 16. For all other purposes, including the EEOC's motion for partial summary judgment, Citizens contends that this fact is hotly disputed.

[4] After the events in issue, Nurse Williams received her doctorate degree, earning the right to be addressed as Dr. Williams. Meaning no disrespect, I use "Nurse Williams" in the text because that was her status as of the time when she was treating Mr. Lescault. See EEOC Motion for Summary Judgment, Statement of Undisputed Facts, ("SUF II") Ex. 6 at 8 (ECF No. 68-6 at 4).

("FMLA") leave. EEOC SUF ¶ 92. When his short-term disability claim was denied on March 8, 2018, this leave became unpaid. Citizens SDF ¶ 92. The parties hotly dispute whether and when Mr. Lescault's entitlement to FMLA leave ended. Citizens claims that it advised Mr. Lescault by letter that he could ask to have it extended up to May 1, 2018, but Mr. Lescault failed to complete the paperwork to accomplish that, so the FMLA leave ended on March 8, 2018, while EEOC alleges that Mr. Lescault reasonably understood that he remained on a time limited ("[a]lmost three months") FMLA leave with less than two weeks left as of his resignation. Compare EEOC SUF ¶¶ 91-92 & Ex. 2 at 57 (ECF No. 80-2 at 7), with Citizens SDF ¶¶ 91-92 & Exs. HH, II, JJ (ECF Nos. 83-1-83-3).

In support of its position that a fact finder could conclude that the parties understood that Mr. Lescault was on an FMLA leave that would end approximately on May 1, 2018, the EEOC relies on Citizens' failure to tell Mr. Lescault that he was no longer on FMLA leave but rather was on an ADA leave; Citizens' failure both to follow its own procedures for setting up an ADA leave and to note any change in its case file with respect to the terms or duration of Mr. Lescault's FMLA leave; and Mr. Lescault's testimony that he understood that his FMLA leave protected his job for almost three months but it had almost run out when he resigned. EEOC SUF ¶¶ 119, 120, 121; Citizens SUF, Ex. M at 57 (ECF No. 64-1 at 15); Citizens SDF ¶¶ 119, 120, 121. As to the reasonableness of Mr. Lescault's understanding, a fact finder could interpret the Citizens' letters (Citizens SDF, Exs. HH, II, JJ) regarding his leave status (indicating that his eligibility continued until May 1, 2018, Ex. II) as confusing to Mr. Lescault in the circumstances, particularly where the letter that clearly states that the FMLA leave had been denied due to "Certification Not Returned" was not sent until April 19, 2028, just prior to Mr. Lescault's telephone call to his supervisor to advise of his resignation. The EEOC further supports its

4

position with Mr. Lescault's testimony that he understood he was on an FMLA leave that was "[a]lmost three months" in duration. EEOC SUF ¶¶ 91-92 & Ex. 2 at 57 (ECF No. 80-2 at 7); see also Citizens SUF ¶ 48-49 & Ex. O (ECF No. 64-15 at 2) (as of April 6, 2018, Citizens acknowledged internally that "[h]e is still eligible to be out on leave so we would not need to do anything else at this time, just continue to hold his position").

On February 15, while Mr. Lescault was still on paid leave, his treating nurse practitioner, Nurse Williams, advised him that he should "seek out other employment . . . due to the increased stress he is having in his current position or role." Citizens SUF ¶ 22. On March 8, 2018, the same day that his short-term disability claim was denied and he shifted to unpaid leave, Mr. Lescault contacted his supervisor by telephone and requested reassignment to a new position that did not involve talking on the telephone; the supervisor provided information about the ADA process and newly open positions. Citizens SUF ¶¶ 26-27. On March 12, 2018, Mr. Lescault spoke with or met with[5] a licensed clinical social worker, Ms. Jane Berger, about ADA "forms"; on March 19, 2018, he met with Ms. Berger. Citizens SUF ¶¶ 31, 33 & Ex. K (ECF No. 65-2 at 8). On March 22-23, Ms. Berger completed Citizens ADA paperwork and faxed it to Citizens. Citizens SUF ¶ 37 & Ex. M (ECF No. 64-13).

In the ADA paperwork, Ms. Berger wrote that Mr. Lescault "suffer[s] from severe anxiety," that he is limited in performing an essential function of his job in that he "reports that answering phones and dealing with customer concerns intensifies symptoms," but (in response to Question 4, asking for suggested accommodations) that he can return to work with the accommodation of "a position where he is not on the phone." Citizens SUF ¶¶ 39-41 & Ex. M (ECF No. 64-13 at 3-4) ("Client would be fine to perform administrative work."). In response to

---

[5] Whether this encounter was in person or by telephone is disputed. EEOC SDF ¶ 38; Citizens SUF ¶ 31.

a compound question on the Citizens ADA form – asking both how the suggested accommodation would enable Mr. Lescault to perform the essential function of his position and, to the extent that the requested accommodation is a leave of absence, for a description of the treatment plan – Ms. Berger wrote: "if accommodations can not be made, client should not not [sic] return.  Client is attending twice-weekly therapy at the time to address this."  Citizens SUF ¶ 42; EEOC SDF ¶ 42.  For the "end date for the above accommodation(s) requested," Ms. Berger wrote, "End date TBD pending ongoing treatment."  Citizens SUF, Ex. M (ECF No. 64-13 at 4).

Ms. Berger's ADA paperwork was reviewed by Citizens "Leave Program Office" ("LPO") employee, Ms. Laurie Francis.  Citizens SUF ¶ 46; EEOC SDF ¶ 46; EEOC SUF ¶ 76. The parties dispute whether (as EEOC contends) Ms. Berger's ADA form requested only the accommodation of reassignment to a position off the telephones or whether (as Citizens contends), the ADA form requested two alternative accommodations, either reassignment or continued leave to complete treatment.  In support of its contention that a fact finder could conclude that only one accommodation – reassignment – was requested, the EEOC marshals such evidence as the language on the completed ADA form itself, specifically Ms. Berger's response to Question 4, in which she sets out reassignment as the only requested accommodation; Ms. Francis' testimony indicating confusion about whether the ADA form also requested a leave of absence; Ms. Francis' note confirming that Mr. Lescault told her that no amount of leave would allow him to return to his old job; and the consistent description by Ms. Francis in the entries in Citizens internal notes and in her communications to Mr. Lescault, which clearly state that Citizens was denying the requested accommodation of reassignment and not that Citizens was granting Mr. Lescault's alternative request for a leave.  EEOC SDF ¶¶ 46,

47, 52.  The EEOC also points to the absence of any clarity regarding whether the leave Citizens claims it offered as an accommodation included job protection and whether Citizens had set an end date in light of Citizens' policy of never approving open-ended leaves of absence.  EEOC SUF ¶¶ 114-23.  That is, the EEOC's evidence establishes that Citizens never described Mr. Lescault's leave, either internally or to Mr. Lescault, as a job-protected ADA accommodation.  EEOC SUF ¶¶ 110-123.

On April 9, 2018, Ms. Francis telephoned Mr. Lescault and told him that Citizens was denying his request for the accommodation of reassignment.  Citizens SUF ¶ 53.  She also told him that he should continue to work with his healthcare professional and with CIGNA (Citizens' third-party leave administrator) but did not tell him that he was being offered the accommodation of an ADA leave of absence.  Id.  On April 20, 2018, Ms. Francis sent Mr. Lescault a letter memorializing this denial decision.  Citizens SUF ¶ 54.  In relevant part, it states:

> [We] received the completed ADA paperwork from your medical provider, indicating that due to your disability you are able to return to work as long as you were off the phones, otherwise you would remain out of work too [sic] continue treatment.
>
> After reviewing the medical documentation received from your provider, we have considered this accommodation for your impairment and the extent to which your impairment limits a major life activity.  As discussed, we are unable to reasonably accommodate this request.  We would be happy to review other, more reasonable accommodations upon your release to return to work.

Citizens SUF ¶ 54, Ex. P (ECF No. 64-16 at 2).  As a fact finder could conclude, when he received Citizens' denial letter, Mr. Lescault was mindful that he had already been "release[d] to return to work" at any job that was "off the phones," as Ms. Francis' letter acknowledges, id.; that (as he understood) his FMLA leave would be ending shortly and no extension of that leave had been offered; and that (as he understood and had told Citizens) the reassignment needed to be permanent, permitting the inference that no amount of therapy would permit him to return to

7

his old job.  Citizens SUF, Ex. A at 57, 67, 92 (ECF No. 64-1 at 15, 18, 24), Ex. B at 139 (ECF No. 64-2 at 6), Exs. L (ECF No. 64-12), N (ECF No. 64-14), O (ECF No. 64-15); EEOC SDF ¶ 46.  Therefore, the offer to resume the interactive process only when he was cleared to return to his old job was hollow.  On April 23, 2018, based on his understanding that Citizens was simply not willing to accommodate his disability, Mr. Lescault resigned and accepted a position as a mail carrier.  See EEOC SDF ¶¶ 55, 56, 59, 60; EEOC SUF ¶¶ 113, 115; Citizens SUF ¶ 61.

Prior to communicating the denial decision to Mr. Lescault, Ms. Francis communicated internally with Mr. Lescault's supervisor and an in-house attorney.  She told the supervisor that Mr. Lescault was looking for a "permanent position off the phones," and that "[i]f this is not feasible he is to remain out on Leave of Absence while he receives treatment," provided that "[h]e is still eligible to be out on leave so we would not need to do anything else at this time, just continue to hold his position."  Citizens SUF ¶ 48-49 & Ex. O (ECF No. 64-15 at 2).  After the supervisor confirmed that there were no vacant positions in the Call Center that did not involve talking to customers and following consultation with the Legal Department, Citizens made the decision that was communicated to Mr. Lescault.  Citizens SUF ¶ 52 & Ex. O (ECF No. 64-15 at 2); EEOC SDF ¶ 52.  In considering Mr. Lescault's request for reassignment, Citizens did not look for vacant positions in any area of the company other than the Call Center.  EEOC SUF ¶¶ 99, 103, 106-08.

The EEOC has proffered evidence of at least six vacant positions that a fact finder could find Mr. Lescault was qualified for and able to perform all essential functions without accommodation.  EEOC Motion for Summary Judgment, SUF II ¶¶ 89-138.  To counter this proof, buttressed by the testimony of Mr. Lescault's supervisor that he provided information about newly open positions, Citizens SUF ¶¶ 26-27, Citizens has directed the Court to the

8

testimony of its witnesses regarding its policy that the accommodation of reassignment outside the department in which the employee has been working requires the employee affirmatively to select and apply for the new position because it is inefficient and almost impossible for Citizens to find a job that would be appropriate for a specific individual.  Citizens SDF ¶ 88.  Therefore, Citizens contends that an offer to Mr. Lescault of reassignment outside the Call Center would have resulted in undue hardship unless Mr. Lescault affirmatively engaged in the interactive process by applying for positions that would be acceptable to him; the EEOC points to other evidence that contradicts this proposition.  See, e.g., EEOC SUF ¶¶ 78-90, 124-26; Citizens SDF ¶¶ 88-90, 124-25.

### III.     Standard of Review

In ADA employment cases, Lewis v. T-Mobile USA, Inc., 1:21-cv-00224-GZS, 2023 WL 315695, at *1 (D. Me. Jan. 19, 2023), as in all civil cases, summary judgment's role is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Garside v. Osco Drug Inc., 895 F.2d 46, 50 (1st Cir. 1990) (internal quotation marks omitted).  It should be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.  A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law."  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal quotation marks omitted).  Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  Tucker v. Town of Scarborough, Docket No. 2:19-cv-00213-GZS, 2020 WL 3271936, at

*1 (D. Me. June 17, 2020) (quoting Triangle Trading Co., Inc. v. Robroy Inds., Inc., 200 F.3d 1, 2 (1st Cir. 1999)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz, 218 F.3d at 5. "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995). "Summary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable [people] might differ as to its significance, summary judgment is improper." Gannon v. Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991) (internal quotation marks omitted).

## IV.     Applicable ADA Law

The ADA mandates that "[n]o covered entity shall discriminate against a qualified individual" with a disability because of the disability. 42 U.S.C. § 12112(a). As pertinent here, discrimination means "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operations of the business." Id. at § 12112(b)(5)(A). To state a prima facie claim for ADA discrimination based on the employer's failure to reasonably accommodate a disability, the claimant must show by a preponderance of the evidence that (1) he was disabled within the meaning of the ADA, (2) he was a qualified individual, and (3) the employer, despite knowing of the disability, did not reasonably accommodate it. Galvin-Assanti v. Atl. Props. Mgmt. Corp.,

483 F. Supp. 3d 125, 139-40 (D.R.I. 2020), appeal dismissed sub nom. Ricci-McNiel v. Atl. Props. Mgmt. Corp., No. 20-1962, 2021 WL 1541331 (1st Cir. Feb. 2, 2021).  A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8); see Horn v. S. Union Gas Co., C.A. No. 07-142S, 2009 WL 462697, at *5 (D.R.I. Feb. 20, 2009).  The employee must prove that he can perform the essential functions of the position with or without reasonable accommodation and bears the burden of showing the existence of a reasonable accommodation, while the employer, has the burden to show that such accommodation would result in undue hardship.  Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 n.10 & 649 (1st Cir. 2000); see Echevarria v. AstraZeneca Pharm. LP, 856 F.3d 119, 127-28 (1st Cir. 2017) (it is claimant's burden to show that requested accommodation is at least facially reasonable).

Reasonable accommodation means, generally, any modification or change in the work environment or in the way in things are customarily performed that enables an individual with a disability to enjoy equal employment opportunities.  29 C.F.R. § 1630.2(o).  "A 'reasonable accommodation is one which would enable [the plaintiff] to perform the essential functions of [his] job [and] . . . at least on the face of things . . . is feasible for the employer under the circumstances.'"  Pereira v. Elec. Boat Corp., C.A. No. 17-059 WES-LDA, 2019 WL 5310262, at *5 (D.R.I. Oct. 21, 2019) (quoting Mulloy v. Achushnet Co., 460 F.3d 141, 148 (1st Cir. 2006)), appeal dismissed, No. 19-2199, 2020 WL 6877931 (1st Cir. Mar. 4, 2020).  To request a reasonable accommodation the employee need only inform the employer that he needs an adjustment or change at work for a reason related to a medical condition.  Tucker v. Town of Scarborough, Docket no. 2:19-cv-00213-GZS, 2020 WL 3271936, at *8 n.15 (D. Me. June 17,

11

2020). Upon receipt of such a request, the employer and employee engage in an informal interactive process to clarify why a type of reasonable accommodation is needed. 29 C.F.R. pt. 1630, App. § 1630.9; see Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans With Disabilities Act, Number 915.002, 2002 WL 31994335, at *5 (Oct. 17, 2002) ("EEOC Guidance on Reasonable Accommodation").[6]  That is, "once the employer becomes aware of the disability of an employee, he is expected to engage in a meaningful dialogue with the employee to find the best means of accommodating that disability." Tobin v. Liberty Mutual, 433 F.3d 100, 108 (1st Cir. 2005).

Reassignment as a reasonable accommodation is placement in a vacant position for which the disabled employee has the skills and other job-related requirements and can perform the essential functions of the new position with or without reasonable accommodation. EEOC Guidance on Reasonable Accommodation, 2002 WL 31994335, at *20-21. Depending on the circumstances, the use of accrued paid leave or unpaid leave to treat a medical condition is another form of reasonable ADA accommodation. 29 C.F.R. pt. 1630, App. § 1630.2(o) ("accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment"). During such an ADA leave, the employee's job is protected unless holding the position open would impose undue hardship. See generally Watkins v. J&S Oil Co., 164 F.3d 55, 61-62 (1st Cir. 1998); Hancock v. Washington Hospital Center, 13 F. Supp. 3d 1, 10 n.4 (D.D.C. 2014).

If the employee is placed on an FMLA leave that also functions as a reasonable accommodation pursuant to the ADA, the indicia of the leave must comply with the statutory

---

[6] An EEOC interpretive guidance is not controlling but constitutes a "body of experience and informed judgment to which courts and litigants may properly resort for guidance." Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 104 n.13 (1st Cir. 2007) (internal quotation marks omitted).

requirements of both the FMLA and ADA.  EEOC Guidance on Reasonable Accommodation, 2002 WL 31994335 at *16-17; see Morin v. Hannaford Bros. Co., LLC, Docket no. 1:17-CV-50-GZS, 2018 WL 2746570, at *12 (D. Me. June 7, 2018).  If the employee requests a leave but cannot provide a fixed date of return, leave may still be a reasonable accommodation, with adjustments to address the hardship of an open-ended leave.  EEOC Guidance on Reasonable Accommodation, 2002 WL 31994335 at *30.  To constitute a reasonable accommodation, the leave must be one that would be effective in addressing the disabled individual's limitations.  Echevarria, 856 F.3d at 128-30.  "[T]he facts relevant to a determination of whether a medical leave is a reasonable accommodation are the facts available to the decision-maker at the time of the employment decision." Id. at 128 (internal quotation marks omitted).  Whether a particular proposed leave is a reasonable accommodation requires a "difficult, fact intensive, case-by-case analyses."  Garcia-Ayala, 212 F.3d at 650.  Generally, when an employee's medical provider proposes a specific accommodation and the employer offers that accommodation, it is presumed to be reasonable.  Purse v. Mount Vernon City Sch. Dist., No. 17-CV-8565 (KMK), 2020 WL 1140876, at *13 (S.D.N.Y. Mar. 9, 2020).

An employer is "not bound to the requested accommodation, but may offer an alternative, so long as it is reasonable."  Kriegel v. State of Rhode Island, Dep't of Corr., 266 F. Supp. 2d 288, 299 n.9 (D.R.I. 2003); see Tucker, 2020 WL 3271936, at *8 (employer need not provide "an employee's preferred accommodation as long as the employer provides an effective accommodation") (internal quotation marks omitted).  "When a plaintiff employee rejects a reasonable accommodation offered by [his] employer . . . [he] is precluded from recovering under the ADA for [his] employer's alleged failure to provide a reasonable accommodation." Sayian v. Verizon New England Inc., Case No. 19-cv-11845-DJC, 2022 WL 375287, at *7 (D.

13

Mass. Feb. 8, 2022) (internal quotation marks omitted). Thus, an ADA claim fails if the employee resigns in response to an offer of a reasonable accommodation instead of remaining to engage in the interactive process. EEOC v. Kohl's Dep't Stores, Inc., 774 F.3d 127, 132-34 (1st Cir. 2014) (when employee quit in response to offer of accommodation that differed from accommodation requested, she failed to engage in the interactive process; EEOC's ADA claim fails).

V.      **Analysis of Citizens' Motion for Summary Judgment**

For purposes of this motion, Citizens accepts that Mr. Lescault can sustain his burden on the first element of a prima facie case in that it assumes that Mr. Lescault suffered from disabling anxiety that resulted in serious physical symptoms when he was required to speak to Citizens' customers on the telephone.[7] As to whether Mr. Lescault was a "qualified individual," the second element of a prima facie case, Citizens acknowledges that there are significant factual disputes and does not challenge that the EEOC has sufficient evidence to meet this element whether because (as Citizens contends) Mr. Lescault could perform the essential functions of his current position with the accommodation of a leave for mental health treatment or because (as the EEOC contends) Mr. Lescault could perform various vacant positions without accommodation when his treating provider asked for the accommodation of reassignment. Citizens' motion for summary judgment is focused on the third element of a prima facie case – the EEOC's burden of showing that Citizens, as the employer, knew of Mr. Lescault's disability and refused to reasonably accommodate it. See generally Pena v. Honeywell Int'l, Inc., 923 F.3d 18, 31 (1st Cir. 2019). Citizens contends that it is entitled to judgment as a matter of law because the undisputed facts establish that it did not refuse reasonable accommodation but rather that it

---

[7] Citizens makes clear that it will vigorously dispute this proposition at trial. See n.3 *supra*.

offered Mr. Lescault the reasonable accommodation of remaining on leave to continue mental health treatment. It contends that this accommodation is presumptively reasonable because it was one of the two alternative accommodations proposed by Mr. Lescault's mental health provider.

Having carefully sifted the parties' evidentiary proffers, I find that the EEOC has marshaled more than enough to permit a fact finder to conclude that Mr. Lescault was never offered a leave as a reasonable accommodation, but rather was left on the existing FMLA leave that had less than two weeks to go before it expired with the meaningless offer to continue the interactive process only when he was medically cleared to return to work at his current position without limitations. EEOC has further established that it is disputed whether Ms. Berger, Mr. Lescault's treatment provider, proposed a leave as an alternative accommodation. And it is disputed whether such a leave would have been effective to restore Mr. Lescault's ability to recover from anxiety sufficiently to be able perform the essential function of his current position (fielding telephone calls from Citizens customers) that his severe anxiety was adversely impacting. See generally Blassingame v. Sovereign Sec., LLC, Civil Action No. 17-1351, 2017 WL 3390199, at *10 (E.D. Pa. Aug. 7, 2017) (declining to dismiss ADA discrimination claim when defendant refused to transfer plaintiff and instead placed her on unpaid leave because "[s]uch allegations allow for the reasonable inferences that . . . [defendant failed] to engage in the interactive process").

Citizens' second argument in support of its motion is related to the first. It argues that the undisputed evidence establishes that it remained willing to continue to participate in the interactive process, when Mr. Lescault abruptly resigned because he had been denied the accommodation he preferred. Citing Kohl's Dep't. Stores, Inc., 774 F.3d at 132-33, Citizens

15

contends that the EEOC's claim fails as a matter of law because there is no dispute contradicting the fact that Mr. Lescault refused to continue the interactive process. With my foundational finding that the EEOC has established that there is trial-worthy factual issue regarding whether Citizens ever offered the reasonable accommodation of a leave of absence, it also is not a stretch to conclude that a fact finder might well accept the permissible inference that Mr. Lescault's resignation was the result of Citizens' blanket refusal to accommodate him in any way while leaving him out on an unpaid FMLA leave that not only was not a reasonable accommodation, but also was about to expire, leaving Mr. Lescault without a job unless he took the one he had been offered.

Citizens third argument – that, as a matter of law, Mr. Lescault was not constructively discharged – fails for the same reason. The applicable test is an objective one; it requires the Court to examine whether the claimant's work conditions became "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Ramos v. Davis & Geck, Inc., 167 F.3d 727, 731 (1st Cir. 1999) (internal quotation marks omitted) (objectively reasonable fear that job is about to end is sufficient to permit finding of constructive discharge). When a disabled employee's request for an accommodation is denied and no other reasonable alternative is offered, based on the employee's objectively reasonable belief that she would either have to work in intolerable circumstances or resign, a jury may conclude that the employee was constructively discharged. Talley v. Fam. Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1109 (6th Cir. 2008). Questions of constructive discharge are fact-driven and should be left to the jury. Willinghan v. Town of Stonington, 847 F. Supp. 2d 164, 191 (D. Me. 2012). The EEOC has presented facts sufficient for a fact finder to conclude that, due to Citizens' refusal to offer any accommodation despite his repeated requests, Mr. Lescault objectively faced

the choice of returning shortly to a job that his anxiety prevented him from performing, or resigning. Therefore, whether he was constructively discharged is a matter to be resolved at trial. Talley, 542 F.3d at 1109 (evidence of complete failure to accommodate despite repeated requests suffices for fact finder to find deliberateness necessary for constructive discharge).

## VI. Conclusion

Based on the foregoing, I recommend that Citizens' motion for summary judgment (ECF No. 62) be denied. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 10, 2023