UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EQUAL EMPLOYMENT : | |
| OPPORTUNITY COMMISSION, : | |
|     Plaintiff, : | |
| : | |
| v. : | C.A. No. 19-362WES |
| : | |
| CITIZENS BANK, N.A., : | |
|     Defendant. : | |

**REPORT AND RECOMMENDATION REGARDING EEOC'S
MOTION FOR PARTIAL SUMMARY JUDGEMENT**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This enforcement action is brought by the Equal Employment Opportunity Commission ("EEOC") against Citizens Bank, N.A., ("Citizens") on behalf of a charging party, Citizens' former employee, William Lescault. Until he resigned on April 23, 2018, Mr. Lescault had been employed at Citizens since 2009 largely working in its Call Center. Since 2015, he had been employed as an "On-Line Banking Service Advisor" fielding escalated telephone calls from Citizens customers. Based on the stress caused by these calls, the EEOC contends that Mr. Lescault became disabled due to anxiety that prevented him from performing an essential function of his job – dealing with Citizens customers on the telephone – and that Citizens violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, because it refused Mr. Lescault's request for the reasonable accommodation of job reassignment (to any available position for which he was qualified that did not require telephone contact with customers) despite the availability of appropriate vacant positions and terminated the interactive process, resulting in Mr. Lescault's constructive discharge. Citizens disputes whether and the degree to which Mr. Lescault suffered from disabling anxiety and contends that a fact finder could conclude that he was trying to manipulate Citizens into offering him another position. It

further argues that, whether or not Mr. Lescault was disabled by anxiety, it accepted his claim of disability at face value, declined to offer reassignment, but complied with the ADA by offering the alternative reasonable accommodation of remaining on leave to continue treatment. Citizens also argues that it expressed its willingness to continue the discussion of what accommodation would be reasonable, when Mr. Lescault abruptly resigned to take another full-time position, thereby terminating the interactive process.

Now pending before the Court are Citizens' motion for summary judgment (ECF No. 62), the EEOC's motion for partial summary judgment (ECF No. 66) and the EEOC's motion to exclude the testimony of Citizens' expert, Dr. Harold Bursztajn, pursuant to <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579 (1993), ("<u>Daubert</u>") (ECF No. 69). All three motions have been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(B). Having reviewed all of the parties' submissions, including all of the attached materials,[1] and considered their arguments, I recommend that all three be denied. This report and recommendation addresses only the second of the three, the EEOC's motion for partial summary judgment. ECF No. 66. The other two motions are separately addressed in two more reports and recommendations, the first of which has issued (ECF No. 90) and the second of which will issue shortly.

I.      **Summary of the EEOC's Motion for Partial Summary Judgment**[2]

---

[1] Collectively, the motions are supported by more than two thousand pages of material.

[2] In compliance with DRI Local Rule 56(a), the parties have presented their Statements of Disputed and Undisputed Facts. For the EEOC's motion, these are cited as follows: EEOC Statement of Undisputed Facts (ECF No. 67) (EEOC SUF II); Citizens Statement of Disputed Facts (ECF No. 74) (Citizens SDF II); Citizens Statement of Undisputed Facts (ECF No. 75) (Citizens SUF II); EEOC Statement of Disputed Facts (ECF No. 85) (EEOC SDF II). Authenticating certain documents for Defendant is the declaration of Attorney Geoffrey Millsom, cited as Millsom Dec. II (ECF No. 76). Authenticating certain documents for the EEOC are the declarations of Attorney Liane Rice, cited as Rice Dec. I (ECF No. 68) and Rice Dec. II (ECF No. 86). Also cited by the parties in connection with this motion for partial summary judgment are the Statements filed in connection with Citizens' motion for summary judgment, which are cited as referenced in the report and recommendation that addresses that

The EEOC's motion asks the Court to enter judgment in its favor on two discrete factual issues. While neither is dispositive of any claim, the EEOC contends that the trial will be significantly streamlined if these issues are resolved now based on what it contends are the undisputed facts.

The EEOC's first argument is focused on the first element of a *prima facie* case – its burden of demonstrating that Mr. Lescault suffered from disabling anxiety as required by the ADA.[3] Galvin-Assanti v. Atl. Props. Mgmt. Corp., 483 F. Supp. 3d 125, 139-40 (D.R.I. 2020), appeal dismissed sub nom. Ricci-McNiel v. Atl. Props. Mgmt. Corp., No. 20-1962, 2021 WL 1541331 (1st Cir. Feb. 2, 2021). The EEOC argues that, apart from the opinion in the report of Citizens' testifying expert, Dr. Harold Bursztajn, it is undisputed that Mr. Lescault was disabled by anxiety within the meaning of the ADA. Contingent upon the Court's granting its Daubert motion to exclude that opinion,[4] the EEOC asks the Court to examine the remaining evidence of

---

motion. See ECF No. 90, at 3 n.2. The summary of the factual background that follows is based on the controlling proposition that all facts and inferences must be interpreted in the light most favorable to the non-moving party. Feliciano de la Cruz, 218 F.3d at 5. For this motion, that is Citizens.

[3] For purposes only of its own motion for summary judgment, Citizens assumed that Mr. Lescault had anxiety amounting to an ADA disability. ECF No. 62-1 at 16. For purposes of the EEOC's motion for partial summary judgment, which is the subject of this report and recommendation, Citizens contends that this fact is hotly disputed.

[4] If the Daubert motion to exclude the Bursztajn report is denied, as I recommend it should be, the EEOC's argument that it is entitled to judgment as a matter of law on Mr. Lescault's claim of disability is moot and this aspect of this report and recommendation becomes unnecessary. Because the Daubert motion was referred for report and recommendation despite cases holding that such a motion to exclude expert testimony is a matter for determination by a magistrate judge, e.g., Summer Infant (USA), Inc., v. TOMY International, Inc., C.A. No. 17-00549-MSM-PAS, 2023 WL 313959, at *2 (D.R.I. Jan. 19, 2023), appeal docketed, No. 23-1524 (1st Cir. Feb. 21 2023), the EEOC has objected to my addressing the Daubert motion pursuant to 28 U.S.C. § 636(b)(1)(A). ECF No. 88. Mindful of this objection, I am issuing my Daubert decision as a report and recommendation subject to de novo review. Tige Boats, Inc. v. Interplastic Corp., No. 1:15-CV-0114-P-BL, 2015 WL 9268423, at *3 (N.D. Tex. Dec. 21, 2015) ("starting point in any analysis of an action by a magistrate judge is the scope of the specific referral") (internal quotation marks omitted); Howe Inv., Ltd. v. Perez Y Cia. de Puerto Rico, Inc., 96 F. Supp. 2d 106, 113 (D.P.R. 2000) ("[t]o the extent a district judge is concerned about the possibility that assigning a nondispositive matter to a magistrate judge will confine his or her power to revise the outcome, a reference directing the magistrate judge to make recommendations is possible") (quoting 12 Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice and Procedure § 3069, at 355-56 (2d ed.1997)). Accordingly, this report and recommendation contains a complete analysis of the portion of instant motion that will be moot if the Daubert motion is denied.

anxiety and adjudge that this element of its claim is established as a matter of law. Citizens has mounted a vigorous fact-based opposition, pointing to flaws and weaknesses in the methodology used to make the diagnosis, as well as surrounding facts and circumstances from which it contends a fact finder could conclude that Mr. Lescault did not have disabling anxiety but overstated his symptoms for purposes of getting the job reassignment that he had failed to procure on the merits. Citizens argues that, even without the Bursztajn opinion, there is sufficient trial-worthy evidence for the dispute whether Mr. Lescault had disabling anxiety for ADA purposes to proceed to a fact finder.

The EEOC's second argument targets a single element of the EEOC's allegation that the only accommodation recommended by Mr. Lescault's health care provider – reassignment to a position that did not require communicating with customers by telephone – was facially reasonable in that the undisputed evidence establishes that there were at least six vacant positions to which, based on his resume and the lack of telephone contact with customers, Mr. Lescault could readily have been reassigned. The EEOC asks the Court to enter judgment on its factual proffer on the availability of a vacant position for which it contends Mr. Lescault was undisputedly qualified to perform the essential job duties with no accommodation, eliminating this as a trial-worthy matter for the fact finder.

## II.     Standard of Review

Summary judgment's role is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug Inc., 895 F.2d 4, 50 (1st Cir. 1990). It should be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could

resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal quotation marks omitted). Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Tucker v. Town of Scarborough, Docket No. 2:19-cv-00213-GZS, 2020 WL 3271936, at *1 (D. Me. June 17, 2020) (quoting Triangle Trading Co., Inc. v. Robroy Inds., Inc., 200 F.3d 1, 2 (1st Cir. 1999)). In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000).

### III. Motion Regarding Diagnosis of Anxiety

#### A. Facts Related to Diagnosis of Anxiety[5]

After June 2015 when Mr. Lescault started working as the "On-Line Banking Service Advisor" in the Call Center, and over the next two years, Mr. Lescault's dissatisfaction with his job is evidenced by his use of Citizens' internal job application procedure to apply for twenty-one positions, almost all outside the Call Center; his efforts were profoundly unsuccessful in that he was interviewed only twice and received no offers. Citizens SUF ¶¶ 11-13; EEOC SUF II, Ex. 3 (ECF No. 68-3). These efforts to procure a different job are focused in the period from October 2016 through February 2018, with the majority of the failed applications clustered in January to October 2017, well prior to Mr. Lescault's first report of anxiety. Id. Ex. G (ECF No.

---

[5] This factual portion of this report and recommendation assumes the reader's familiarity with the factual statement in ECF No. 90, at 3-9; I include here only the facts specifically pertinent to the EEOC's motion, this time drawing the inferences that favor Citizens.

64-7); EEOC SUF II ¶ 24; Citizens SDF II ¶ 24.  While the EEOC points to contrary evidence, this evidence is more than sufficient to permit the inference that Mr. Lescault's dissatisfaction with working as the "On-Line Banking Service Advisor" in the Call Center was a matter of job preference in that Mr. Lescault's efforts to transfer out of this job began and persisted well prior to his development of what he now claims are symptoms of disabling anxiety caused by this job.

Beginning in January 2018, as Mr. Lescault later reported to his therapist, he began to experience symptoms of extreme anxiety that he linked to "changes at work," including "back to back calls" and "agents not doing what they should be doing."  Citizens SUF ¶ 34, Ex. K[6] (ECF No. 65-2 at 4); EEOC SUF II ¶ 24; Citizens SDF II ¶ 24.  On February 8, 2018, a nurse practitioner in the office of Mr. Lescault's primary care provider, Nurse Casey Williams,[7] diagnosed unspecified anxiety disorder, prescribed medication and recommended therapy.  EEOC SUF II ¶¶ 6, 10, 28-29, 32 & Ex. 14 (ECF No. 68-14 at 13-15).  At the time she made this diagnosis, Nurse Williams had only recently begun practicing family medicine, had no specialized training in the diagnosis and treatment of mental health and was working with a mentor.  EEOC SUF II ¶ 16, Ex. 6 at 9-10 (ECF No. 68-6 at 5-6); Ex. 7 at 22, 24 (ECF No. 68-7 at 7-8).  The medical record reflecting Nurse Williams' diagnosis is signed by her mentor, family nurse practitioner, Dr. Jo-Ann Moore.  EEOC SUF II, Ex. 14 (ECF No. 68-14 at 13-15).  The

---

[6] This exhibit is medical records, which were filed under seal.  Millsom Dec. III, Exs. I, K (ECF Nos. 65-1-65-2).  In this report and recommendation, the content of the sealed document is referenced only to the extent necessary to explain the Court's analysis and decision.  Paige v. Rhode Island Pub. Transit Auth., C.A. No. 18-347JJM, 2021 WL 2349749, at *1 n.2 (D.R.I. June 9, 2021) (confidentiality must be set aside as to the terms and communications regarding settlement that are necessary to the court's determination of a motion to enforce), adopted by text order (D.R.I. June 29, 2021).

[7] After the events in issue, Nurse Williams received her doctorate degree, earning the right to be addressed as Dr. Williams.  Meaning no disrespect, I use "Nurse Williams" in the text because that was her status as of the time when she was treating Mr. Lescault.  See EEOC SUF II, Ex. 6 at 8 (ECF No. 68-6 at 4).

evidence permits the inference that Dr. Moore, a more experienced nurse practitioner, did not see Mr. Lescault.  See EEOC SUF II, Ex. 7 at 8, 10, 22 (ECF No. 68-7 at 3-4, 7).

On February 15, 2018, Nurse Williams saw Mr. Lescault again due to worsening anxiety, found that his anxiety was too severe for him to work, and ordered a three week leave, which began as of February 15, 2018.  EEOC SUF II ¶¶ 35, 38, 40, Ex 6 at 31 (ECF No. 68-6 at 21).  Mr. Lescault's last appointment with Nurse Williams was on March 7, 2018.  EEOC SUF II ¶ 42, Ex. 6 at 37 (ECF No. 68-6 at 22).  On March 12, 2018, Dr. Frank Maggiacomo, Mr. Lescault's primary care physician, saw Mr. Lescault and endorsed the diagnosis of anxiety; based on the wording of Dr. Maggiacomo's treating note ("Patient has been recently diagnosed by the nurse practitioner with anxiety disorder"), EEOC SUF II ¶¶ 6, 44, Ex. 13 at 3 (ECF No. 68-13 at 3), his testimony, EEOC SUF II ¶ 46, Ex. 5 at 41 (ECF No. 68-5 at 12) ("I would have read Dr. [sic] Moore's note and made an assessment that, you know, the signs and symptoms are consistent with it."), and his refusal to fill in Citizens ADA paperwork, Citizen SUF ¶ 30, Ex. A at 92 (ECF No. 64-1 at 24), a fact finder could conclude that Dr. Maggiacomo did not independently diagnose anxiety but simply relied on the diagnosis of the inexperienced nurse practitioner, Nurse Williams, or on the mentor who did not perform the examination, Dr. Moore.

After his last appointment with Nurse Williams on March 7, 2018, on March 12, 2018, Mr. Lescault spoke with or met with[8] a licensed clinical social worker, Ms. Jane Berger; on March 19, 2018, he met with Ms. Berger.  Citizens SUF ¶¶ 31, 33 & Ex. K (ECF No. 65-2).  After these two encounters, on March 22-23, Ms. Berger completed the Citizens ADA paperwork and faxed it to Citizens.  Citizens SUF ¶ 37 & Ex. M (ECF No. 64-13).  In the paperwork, Ms. Berger wrote that Mr. Lescault "suffer[s] from severe anxiety," that he is limited

---

[8] Whether this encounter was in person or by telephone is disputed.

7

in performing an essential function of his job in that he "reports that answering phones and dealing with customer concerns intensifies symptoms," but that he can return to work with the accommodation of "a position where he is not on the phone," as well as that "[c]lient is attending twice-weekly therapy at the time to address this," with the "[e]nd date TBD pending ongoing treatment." Citizens SUF ¶¶ 39-42 & Ex. M (ECF No. 64-13). From March 19, 2018, through April 30, 2018, when insurance coverage for therapy ran out, Mr. Lescault attended therapy with Ms. Berger, a total of at least seven appointments. Citizens SUF ¶¶ 33, 38 & Ex. K (ECF 64-11); Citizens SDF II ¶ 51, Ex. V (ECF No. 76-4). On April 13, 2018, Ms. Berger completed the paperwork for CIGNA in connection with Mr. Lescault's short-term disability application; in it, she wrote that he "need[s] to stay in bed for initial two weeks . . . continued to struggle w/anxiety when leaving the house [and] . . . experienced physical symptoms of anxiety even at home." Citizens SUF II ¶ 149.

      Ms. Berger's treating note for her final appointment with Mr. Lescault on April 30, 2018, presents a sharp contrast to Ms. Berger's opinions that Mr. Lescault's anxiety was severe and would persist "TBD," Citizens SUF, Ex. M (ECF No. 64-13 at 4), despite ongoing intensive therapy, as she expressed to Citizens and its disability administrator, CIGNA, to support Mr. Lescault's requests for the ADA accommodation of reassignment and short-term disability. Written just two weeks after Ms. Berger's submission to CIGNA, it states, "Client reports major improvement in symptoms." Citizens SUF II ¶ 152 & Ex. V (ECF No. 76-4 at 8). A fact finder could infer from her note that Ms. Berger concurred in Mr. Lescault's stopping therapy. Id.

      From these facts and inferences, a fact finder could well draw the conclusion that Mr. Lescault's symptoms were not nearly as severe as Ms. Berger claimed, or that they were caused by something other than disabling anxiety triggered by talking to Citizens customers. Consistent

with the latter conclusion is a treating note dated July 26, 2018, written by Dr. Maggiacomo in which he opined that Mr. Lescault's apparent symptoms of anxiety may have been caused by anxiety disorder as diagnosed by Nurse Williams or may have been caused by another physical disorder for which Dr. Maggiacomo was providing treatment, or both.  Further, by July 26, 2018, Dr. Maggiacomo confirmed that Mr. Lescault was reporting that his emotional lability and ability to function had improved, in Dr. Maggiacomo's opinion due to a combination of medication for anxiety and for the other non-anxiety condition.  EECO SUF II, Ex. 5 at 43, 45-48 (ECF No. 68-5 at 14-18).  Dr. Maggiacomo noted, "He is doing extremely well emotionally and is looking for a job."  Id. at 47 (ECF No. 68-5 at 17).  EEOC concedes that Mr. Lescault's anxiety was under control by July 2018.  ECF No. 69 at 3.

      Pertinent to the EEOC's motion is Mr. Lescault's Facebook correspondence with a coworker from February16 through April 23, 2018.  Citizens SUF ¶ 24, Ex. J (ECF No. 64-10).  Focusing on Mr. Lescault's side of these exchanges, they begin soon after the commencement of his leave based on the diagnosis of anxiety.  Id.  Initially, they reflect Mr. Lescault's belief that he would "bounce back" with medication and his decision not to see a psychiatrist "because I believe the meds will work."  Ex. J (ECF No. 64-10 at 5, 9).  However, beginning with his March 7 statement of his intent to tell Citizens "I want to report back to work but in a different role," to his March 8 commitment, "I cannot go back to the phones," by March 16, 2018, these messages had shifted, permitting the interpretation, for example, that they reflect:

- Mr. Lescault's plan was to "get my ducks in a row by a therapist" despite his doctor having been "short with me";

- Mr. Lescault's expression of amusement ("[h]ahaha") regarding how Citizens would respond to his therapist's writing that he is not to return unless offered an "administrative position";

9

- Mr. Lescault's expression of amusement ("hahaha") regarding what he would say once he was "resigning," written on April 4, 2018, permitting the inference that he had already decided to resign;

- Mr. Lescault's determination expressed on April 4, 2018, that "if they come back and say no I'm gonna persue [sic] it to prove a point";

- Mr. Lescault's anger at his supervisor ("Man Brian is a f__ son of a bitch.");

- Mr. Lescault's report posted on April 23, 2018, that he told his supervisor, "you guys do not want to accommodate told [sic] my doctor is requesting so I'm quitting."

Ex. J. (ECF No. 64-10 at 6-7, 10, 20-23, 26, 30).

Citizens argues that these statements by Mr. Lescault would permit a fact finder to conclude that Mr. Lescault himself did not consider his anxiety to be serious in that he expected medication to resolve the symptoms, as well as that his real plan was to find a new job and resign, while his goal in pursuing ADA reassignment was express anger at his supervisor and "to prove a point" to Citizens. ECF No. 64-10 at 23. Consistent with this inference is the fact that, on April 13, 2018, before receiving Citizens' letter of denial of the accommodation of reassignment, Mr. Lescault had already contacted the EEOC to begin the process of filing a charge of discrimination. Citizens SUF ¶¶ 54, 73. From these postings, a fact finder further could infer that Mr. Lescault's encounters with the therapist, Ms. Berger, and his pursuit of reassignment as an ADA accommodation was part of an effort to manipulate Citizens into offering him the sort of position he had been unable to procure on the merits in 2016 and 2017. On April 23, 2018, Mr. Lescault resigned from Citizens and accepted a position he had already lined up as a mail carrier. See EEOC SDF ¶ 59; EEOC SUF ¶¶ 113; Citizens SUF ¶ 61.

Also pertinent to the EEOC's motion is the post-resignation evidence. This establishes that, while working (briefly) for the post office, Mr. Lescault had no physical symptoms of

10

anxiety except when disciplined by his superior. Citizens SUF II ¶ 153; EEOC SDF II ¶ 153. After he was fired from the post office job, four months later, Mr. Lescault began working as a school bus driver, which also caused no anxiety. Citizens SUF ¶ 64; EEOC SDF ¶ 64; Citizens SUF II ¶ 156. Less than a year later, in March 2019, Mr. Lescault began working at CVS in a "100 percent phone-based position," handling telephone calls from coworkers, though not from customers. Citizens SUF ¶¶ 65-66; EEOC SDF ¶¶ 65-66. Even though this job sometimes involves taking telephone calls from potentially upset employees of CVS, anxiety has not affected Mr. Lescault's ability to perform the work. Citizens SUF ¶ 68-69; EEOC SDF ¶¶ 68-69.

### B. Law[9] and Analysis Related to Diagnosis of Anxiety

Anxiety is not *per se* disabling under ADA. See Moore v. Perficient, Inc., Civil Action No. 20-cv-2124-SDG-CMS, 2020 WL 11884718, at *2 (N.D. Ga. Sept. 17, 2020) (anxiety is a mental impairment that "may" qualify as a disability depending on severity and impact; each case is fact specific), adopted, 2020 WL 11884717 (N.D. Ga. Oct. 26, 2020). Rather, the Court "must determine the existence of a disability on a case-by-case basis. . . . [It] must assess the effect of [the employee's] alleged impairment on his life, rather than relying on his diagnoses alone, in order to determine whether he is disabled within the meaning of the ADA." Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 33 (1st Cir. 2010) (internal quotation mark and citation omitted). In reliance on these principles, the EEOC's motion for judgment on the question of Mr. Lescault's allegedly disabling anxiety may be given short shrift. Without regard to Dr. Bursztajn's expert opinion that Mr. Lescault did not have disabling anxiety adversely affecting his ability to speak to Citizens customers on the telephone, the record abounds with competent and concrete evidence from which a fact finder could conclude that Mr. Lescault did not suffer

---

[9] A more complete explication of applicable law is set out in the report and recommendation issued in connection with Citizens' motion for summary judgment. ECF No. 9, at 10-14. I assume the reader's familiarity with it.

from anxiety, or that, if he did, it was not disabling as he described (and his treating providers opined), or that, if he did and it was disabling, it did not just prevent him from taking telephone calls from Citizens' customers but also affected his ability to perform other jobs at Citizens.

To counter the force of Citizens' factual proffer, the EEOC relies on two Social Security disability cases. See Ormon v. Astrue, 497 F. App'x 81, 85-87 (1st Cir. 2012); Carradine v. Barnhart, 360 F.3d 751, 755 (7th Cir. 2004). It cites them for the proposition that, without Dr. Bursztajn's testimony, a jury is barred from hearing this evidence and must be instructed that the ADA disabling impairment (resulting in a limitation affecting the ability to speak on the telephone with customers) is established as a matter of law. The EEOC contends that, no matter what other evidence may be proffered, it must prevail on the first prong of the *prima facie* case because Mr. Lescault told the nurse practitioner and the social worker, clinicians licensed to make such a diagnosis, that he had certain symptoms based on which they diagnosed an ADA disabling impairment. That is, as the EEOC argues, in an ADA case with a factual record from which a jury might find, for example, that reported symptoms were overstated or exaggerated, rendering a diagnosis unreliable, "[t]he First Circuit does not allow a lay judge or jury to second guess [Mr. Lescault's] reported symptoms." ECF No. 66 at 14.

This proposition is simply wrong. For starters, Ormon itself is expressly based on the specific "circumstances in this case," in which a Social Security administrative law judge improperly relied on medical opinions that did not support his finding that they reflected the medical symptom of "malingering." Ormon, 497 F. App'x at 86. Similarly, in Carradine, the court condemned the administrative law judge's insistence on objective evidence to support the claim of extreme pain when pain, by its nature, is subjective; Carradine does not adopt the sweeping principle for which the EEOC cites it. Carradine, 360 F.3d at 755. More importantly,

12

the EEOC misstates Social Security law, which permits administrative law judges to discount a claimant's subjective statements to doctors and to reject medical opinions as unpersuasive based on any evidence, not just that from a physician. E.g., 20 C.F.R. § 416.929 (Social Security decisionmakers must "evaluate symptoms, including pain . . . [and] [i]n evaluating the intensity and persistence of . . . symptoms, including pain, we will consider all of the available evidence.") (emphasis added); 20 C.F.R. § 404.1520c (Social Security adjudicators assess persuasiveness of medical opinions based on "many types of evidence from different sources") (emphasis added); see, e.g., White v. Colvin, No. CA 14-171 S, 2015 WL 5012614, at *2, 11 (D.R.I. Aug. 21, 2015) (no error for administrative law judge to reject medical opinions that claimant was cognitively limited and illiterate in reliance on prison records establishing participation in group sessions that required him to complete reading and writing assignments); David v. Astrue, C.A. No. 10-314M, 2011 WL 2837509, at *11 (D.R.I. June 17, 2011) (ALJ appropriately relied on evidence such as claimant's report of cooking dinner every night for her boyfriend in finding treating physician opinion that she was disabled worthy of little weight), adopted, 2011 WL 2836369 (D.R.I. July 14, 2011).

In any event, the complex administrative legal infrastructure governing fact finding by Social Security administrative law judges is profoundly different from the law that is applied to an ADA claim to be presented to a fact finder at a trial. The ADA explicitly contemplates that the disability determination is to be made by the factfinder on an individualized, case-by-case basis. Carreras, 596 F.3d at 33; Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 20 (1st Cir. 2004); see also Mann v. La. High Sch. Athletic Ass'n, 535 F. App'x 405, 411 (5th Cir. 2013) (per curiam) (holding that doctor's diagnosis of anxiety disorder "is insufficient, standing alone, to support a finding" that plaintiff is likely to succeed in proving ADA disability). "Merely

having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairments limit a major life activity." Mann, 535 F. App'x at 411 (internal quotation marks omitted). Under this framework, it is insufficient merely to submit evidence of a medical diagnosis of an impairment; rather, those seeking ADA protection must offer evidence that the extent of the limitation caused by the impairment is substantial and the employer may present other evidence to rebut the employee's proof. Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir. 2011); Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002); see 42 U.S.C. § 12102(1)(A); Eustace v. Springfield Public Schools, 463 F. Supp. 3d 87, 101 (D. Mass. 2020).

Equally flawed is the EEOC's argument (previously rejected by this Court, ECF No. 47 at 15 n.13), that, with the passage of the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008), Congress threw up an absolute bar, preventing an employer from ever challenging a medical opinion that an employee actually suffers from a supposedly diagnosed impairment except with a contrary medical opinion. As before, the EEOC again contends that disabling anxiety must be treated as conclusively proven by the say-so of Mr. Lescault, as reflected in the opinions of the treating nurse practitioner and social worker. The problem is that the ADAAA unquestionably relaxed what is needed to prove disability so that the claimant is not required to have a medical opinion causally linking the diagnosis to its disabling impact as long as that conclusion may be based on other evidence. See Mancini v. City of Providence by & through Lombardi, 909 F.3d 32, 40-46 (1st Cir. 2018) (after ADAAA, employee's claim of impairment adequately supported by evidence of knee injury requiring surgery; he is not required to have medical professional opining to causal link between impairment and disabling symptoms). However, Mancini does not support the reverse

14

proposition for which the EEOC cites it – that the employer cannot prevail on this element of an ADA claim no matter what factual evidence it can marshal unless it has a medical opinion supporting its position. That is, neither Mancini nor the ADAAA eliminated the employers' right to present conflicting evidence from any source that undermines the claim of disabling symptoms for consideration by a factfinder.

Nor is the EEOC's argument supported by the case on which the EEOC principally relies, Williams v. AT & T Mobility Servs., LLC, 186 F. Supp. 3d 816 (W.D. Tenn. 2016). Williams involved an employer that had presented nothing to refute the claimant's overwhelming evidence of debilitating mental illness, including years of treatment and a partial hospitalization; based on this factual deficiency, the court concluded that there was no factual dispute that the plaintiff was disabled under the ADA and entered partial summary judgment. Id. at 819-825. The factual array in Williams stands in stark contrast to the mixed evidence of disabling anxiety developed in this case. The conflicting evidence here gives rise to a trial-worthy issue that a jury or judge is more than capable of deciding.

Based on the foregoing, I recommend that, if the Daubert motion to exclude Dr. Bursztajn's opinions is granted, the Court should deny the EEOC's motion for summary judgment to the extent that it seeks a determination as a matter of law that Mr. Lescault suffered from ADA-disabling anxiety that adversely impacted his ability to speak with customers on the telephone.

IV.   **Motion Regarding Vacant Positions**[10]

---

[10] This portion of this report and recommendation assumes the reader's familiarity with the factual statement in ECF No. 90, at 3-9; I include here only the facts specifically pertinent to the EEOC's motion, this time drawing the inferences that favor Citizens.

Focusing on the point when Mr. Lescault initially sought return to work, the EEOC relies on the testimony of various Citizens employees, corroborated by its independent vocational expert, to argue that it is undisputed, based on Mr. Lescault's resume and the requirements listed in the job opening descriptions, that he was then qualified for at least six vacancies outside the Call Center.  See  EEOC SUF II ¶¶ 88-138.  The EEOC relies on this fact as part of the foundation for its contention that Mr. Lescault's requested accommodation of reassignment was facially reasonable because there were available positions to which he could then have been reassigned.[11]  Audette v. Town of Plymouth, 858 F.3d 13, 20-21 (1st Cir. 2017).

As to one of the six, Citizens contends that its eligibility as a vacant job that met Mr. Lescault's requirements is plainly disputed in that, for the pertinent time period, this position required telephone calls to potentially angry customers, while the EEOC argues this ceased to be an essential job function soon after the position was posted.  Citizens SUF II ¶¶ 160-61; EEOC SDF II ¶¶ 160-61.  As to all of the six, Citizens argues that its evidence permits the inference that none of these jobs would have been available if the fact finder concludes that Mr. Lescault's anxiety was as disabling as he was contemporaneously describing it – for example during his deposition (he was "having trouble focusing, concentrating, and even going places where I just wanted to be in isolation"), as described in Nurse Williams' treating note (*inter alia*, "fatigue, lack of motivation, insomnia") and as expressed by Ms. Berger in the opinions she wrote for Citizens and CIGNA, including that he was suffering serious limits in his ability to work at all in a call center (not just on the telephone) and to get out of bed for two weeks or to leave the home.  Citizens SUF 17; Citizens SUF II ¶¶ 142, 148-49.  Citizens' witnesses on job availability

---

[11] The EEOC's motion does not address the evidence Citizens has developed to support its contention that reassignment outside the Call Center as an accommodation would inflict undue hardship without Mr. Lescault's active participation in seeking and internally applying for positions for which his resume and experience suggest he might have been suited.

testified that, although Mr. Lescault's resume contained the qualifications needed for all six positions, based on his own description of his symptoms at the relevant point in time, he would not have been qualified to perform the essential functions of any of them.  See Citizens SUF II ¶¶ 158-59, 162-65.  From this evidence, a fact finder could draw the inference that, if he was as disabled as he claimed, none of these positions would be available.  Notably, the EEOC's vocational expert effectively confirmed this conclusion when she testified that she could not opine that Mr. Lescault was able to perform these positions if he was experiencing extreme fatigue, the inability to get out of bed or leave his home, trouble focusing or lack of concentration.  Citizens SUF II ¶¶ 157.

Based on the foregoing, I recommend that the Court deny the EEOC's motion for judgment to the extent that it seeks a determination as a matter of law that there were vacant positions to which Mr. Lescault could have been reassigned as a reasonable accommodation.  This is an issue to be resolved by a fact finder.

**V.     Conclusion**

Based on the foregoing, I recommend that the EEOC's motion for partial summary judgment (ECF No. 66) be denied.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge

March 10, 2023