UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EQUAL EMPLOYMENT          :
OPPORTUNITY COMMISSION,   :
        Plaintiff,        :
                          :
  v.                      :    C.A. No. 19-362WES
                          :
CITIZENS BANK, N.A.,      :
        Defendant.        :

**REPORT AND RECOMMENDATION REGARDING _DAUBERT_ MOTION TO
EXCLUDE DR. BURSZTAJN**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This enforcement action is brought by the Equal Employment Opportunity Commission

("EEOC") against Citizens Bank, N.A., ("Citizens") on behalf of a charging party, Citizens'

former employee, William Lescault.  Until he resigned on April 23, 2018, Mr. Lescault had been

employed at Citizens since 2009 largely working in its Call Center.  Since 2015, he had been

employed as an "On-Line Banking Service Advisor" fielding escalated telephone calls from

Citizens customers.  Based on the stress caused by these calls, the EEOC contends that Mr.

Lescault became disabled due to anxiety that prevented him from performing an essential

function of his job – dealing with Citizens' customers on the telephone – and that Citizens

violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, _et seq_., because it

refused Mr. Lescault's request for the reasonable accommodation of job reassignment (to any

available position for which he was qualified that did not require telephone contact with

customers) despite the availability of appropriate vacant positions and terminated the interactive

process, resulting in Mr. Lescault's constructive discharge.  Citizens contends that Mr. Lescault

was not disabled by anxiety and was trying to manipulate Citizens into offering him another

position.  It further argues that, whether or not Mr. Lescault was disabled by anxiety, it accepted

his claim of disability at face value, offered him the reasonable accommodation of remaining on leave to continue treatment and expressed its willingness to continue the discussion of what accommodation would be reasonable when Mr. Lescault abruptly resigned to take another position, thereby terminating the interactive process.

Now pending before the Court are Citizens' motion for summary judgment (ECF No. 62), the EEOC's motion for partial summary judgment (ECF No. 66) and the EEOC's motion to exclude the testimony of Citizens' expert, Dr. Harold Bursztajn, pursuant to Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993) ("Daubert") (ECF No. 69). All three motions have been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(B).[1] Having reviewed all of the parties' submissions and considered all of their arguments, I recommend that all three be denied. This report and recommendation addresses only the Daubert motion to exclude Dr. Bursztajn from testifying. The other two are separately addressed in two already issued reports and recommendations. ECF Nos. 90-91.

## I.     Background

Dr. Harold Bursztajn is an "impressively credential[led] Harvard-educated psychiatrist/forensic psychiatrist"[2] who was engaged by Citizen to opine regarding the EEOC's

---

[1] Because the Daubert motion was referred for report and recommendation despite cases holding that such a motion to exclude expert testimony is a matter for determination by a magistrate judge, e.g., Summer Infant (USA), Inc., v. TOMY International, Inc., C.A. No. 17-00549-MSM-PAS, 2023 WL 313959, at *2 (D.R.I. Jan. 19, 2023), appeal docketed, No. 23-1524 (1st Cir. Feb. 21 2023), the EEOC has objected to my addressing the Daubert motion pursuant to 28 U.S.C. § 636(b)(1)(A). ECF No. 88. Mindful of this objection, I issue this decision as a report and recommendation subject to de novo review. Tige Boats, Inc. v. Interplastic Corp., No. 1:15-CV-0114-P-BL, 2015 WL 9268423, at *3 (N.D. Tex. Dec. 21, 2015) ("starting point in any analysis of an action by a magistrate judge is the scope of the specific referral"); Howe Inv., Ltd. v. Perez Y Cia. de Puerto Rico, Inc., 96 F. Supp. 2d 106, 113 (D.P.R. 2000) ("[t]o the extent a district judge is concerned about the possibility that assigning a nondispositive matter to a magistrate judge will confine his or her power to revise the outcome, a reference directing the magistrate judge to make recommendations is possible") (quoting 12 Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice and Procedure § 3069, at 355-56 (2d ed.1997)).

[2] The EEOC challenged Dr. Bursztajn's credentials as part of its argument that the Rule 35 examination should not be permitted. This objection was overruled; the Court found that Dr. Bursztajn was well qualified, including to oversee the choice and administration of clinical tests. See ECF No. 47 at 18. In its Daubert motion, the EEOC now

allegation that, in the relevant period (January to April 2018), Mr. Lescault suffered a disabling-per-the-ADA anxiety disorder that prevented or adversely impacted his ability to speak with Citizens' customers on the telephone.  ECF No. 47 at 7.  Dr. Bursztajn's opinions are laid out in his Report, which he signed on February 11, 2022.  ECF No. 69-1 ("Bursztajn Report").  To develop these opinions, on November 15, 2021, Dr. Bursztajn performed a court-ordered Fed. R. Civ. P. 35 examination ("Rule 35 examination").  This consisted of psychological testing using the Millon Clinical Multiaxial Inventory-III ("MCMI-III") and a structured/unstructured interview, as well as the making of objective observations.  Dr. Bursztajn analyzed the convergent validity of the test data, the examination data and the independent protocol-based "blindly" scored Clinical Interpretive Report generated by Pearson Assessments for the MCMI-III test data; he reviewed and analyzed certain case materials listed in the Report; and he reviewed and analyzed relevant literature listed in the Report.  ECF No. 69-1 at 3-5.  Regarding test administration, Dr. Bursztajn received three years of graduate training during his psychiatric residency that covered psychological test administration.  ECF Nos. 69-2 at 15.  As described by Citizens, Dr. Bursztajn's Report reflects a mainstream approach of convergent validity and employs a widely accepted retrospective analysis.  ECF No. 72 at 3.

In his Report, Dr. Bursztajn expressed his opinion that, during the relevant period in 2018, Mr. Lescault did not suffer from an anxiety disorder resulting in symptoms that prevented or adversely affected his ability to talk on the telephone with customers.  ECF No. 69-1 at 15-16. Rather, Dr. Bursztajn opines that, apart from medical conditions that potentially contributed to his symptoms, Mr. Lescault's anxiety symptoms were secondary to longstanding personality

appears to accept that Dr. Bursztajn is "an eminently credentialled psychiatrist," although it still challenges his qualifications to administer the test he used, as discussed *infra*.  ECF No. 69 at 13 (quoting ECF No. 32-1 at 11).

3

dysfunction and did not constitute a psychiatric impairment that prevented or adversely impacted his ability to talk on the telephone with customers.  Id.

Dr. Bursztajn's Rule 35 examination of Mr. Lescault was significantly delayed due the EEOC's argument, *inter alia*, that federal courts lack the power to order Rule 35 examinations in cases brought by the EEOC, no matter how unfair the denial of such discovery might be to the defendant; the Court rejected this argument and ordered the examination to proceed.  ECF No. 47, objection overruled, ECF No. 53.  Then, after the Rule 35 examination was completed, the EEOC unsuccessfully asked the Court to exclude the resulting Report in its entirety as a Fed. R. Civ. P. 37(b)(2)(A) sanction because of what the EEOC contended was a violation of a court-ordered condition of the examination.  EEOC v. Citizens Bank, N.A., C.A. No. 19-362WES, 2022 WL 2785987, at *1 (D.R.I. July 15, 2022).  In the latter decision, the Court ruled that the allegedly sanctionable conduct did not violate the Court's condition, as well as that "any potential for confusion may readily be addressed at trial."  Id. at *5.

## II.    Legal Standard

In considering the EEOC's Daubert motion, the Court must determine whether the proffered expert testimony meets the requirements of Fed. R. Evid. 702 in that it is based on "scientific, technical, or other specialized knowledge [that] will assist the trier of fact."  Daubert, 509 U.S. at 588 (internal quotation marks omitted); ADP Marshall, Inc. v. Noresco, LLC, 710 F. Supp. 2d 197, 225-26 (D.R.I. 2010).  Rule 702/Daubert requires the Court to act as a gatekeeper to "ensur[e] that an expert's proffered testimony 'both rests on a reliable foundation and is relevant to the task at hand.'"  Samaan v. St. Joseph Hosp., 670 F.3d 21, 31 (1st Cir. 2012) (quoting Daubert, 509 U.S. at 597).  Reliability and relevance are separate and distinct inquiries.

Samaan, 670 F.3d at 31.  The party seeking to introduce expert testimony bears the burden of

establishing both.  Milward v. Rust-Oleum Corp., 820 F.3d 469, 473 (1st Cir. 2016).

For relevance, the Court must determine whether the testimony "will assist the trier of

fact to understand or determine a fact in issue."  Daubert, 509 U.S. at 592.  Thus, "a trial court

may bar expert testimony if that testimony will not assist the jury to sort out contested issues."

United States v. Mehanna, 735 F.3d 32, 67 (1st Cir. 2013); see also United States v. Navedo-

Ramirez, 781 F.3d 563, 568 (1st Cir. 2015) ("If a layperson is capable of understanding an issue

without the aid of an expert, a district court may properly decline to admit expert testimony on

that issue on the ground that it would not be helpful to the jury.").  "The fundamental question

that a court must answer . . . is [w]hether the untrained layman would be qualified to determine

intelligently and to the best degree, the particular issue without enlightenment from those having

a specialized understanding of the subject matter involved."  United States v. Shay, 57 F.3d 126,

132 (1st Cir. 1995) (internal quotation marks omitted).

For reliability, the Court has broad latitude to engage in a flexible case-specific inquiry

"to make certain that an expert, whether basing testimony on professional studies or personal

experience, employs in the courtroom the same level of intellectual rigor that characterizes the

practice of an expert in the relevant field."  Milward v. Acuity Specialty Prods. Grp., Inc., 639

F.3d 11, 15 (1st Cir. 2011) (internal quotation marks omitted).  "So long as an expert's scientific

testimony rests upon good grounds, based on what is known, it should be tested by the

adversarial process."  Lawes v. CSA Architects & Engineers LLP, 963 F.3d 72, 98 (1st Cir.

2020) (cleaned up); see Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of

contrary evidence, and careful instruction on the burden of proof are the traditional and

appropriate means of attacking shaky but admissible evidence.").  Thus, for example, if the

factual underpinning of the expert's opinion is weak, that affects the weight and credibility of the testimony – a question to be resolved by the jury.  Martinez v. United States, 33 F.4th 20, 24 (1st Cir. 2022).  Nor should the Court act as the guarantor of correctness of the expert's assessment. Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998).

If otherwise admissible under Daubert and Rule 702, "expert testimony remains subject to exclusion under Rule 403" if its probative value is "substantially outweighed" by the danger of unfair prejudice or confusion.  United States v. Pires, 642 F.3d 1, 11-12 (1st Cir. 2011). Exclusion under Rule 403 is "extraordinary and to be invoked sparingly."  Rivera-Marrero v. Presbyterian Cnty. Hosp., 255 F. Supp. 3d 290, 293 (D.P.R. 2017) (internal quotation marks omitted).

## III.    Analysis

The EEOC attacks four components of Dr. Bursztajn's work:

(a)    Arguing unreliability, irrelevancy and undue prejudice, the EEOC attacks Dr. Bursztajn's opinions to the extent that they are based on the MCMI-III and its Interpretative Report;

(b)    Arguing unreliability, the EEOC challenges Dr. Bursztajn's interview methodology, including his failure to record the questions and answers, the delay between the relevant events and Dr. Bursztajn's examination and the presence of another person during the examination (which was the subject of the EEOC's unsuccessful motion for sanctions);

(c)    Arguing undue prejudice, the EEOC asks the Court to exclude any opinion of Dr. Bursztajn that is critical of Mr. Lescault's treating sources (his social worker therapist, the nurse practitioner and the primary care physician), including whether the DSM-5[3] criteria for their diagnoses were met and because these opinions imply that an ADA diagnosis can be made only by a psychiatrist; and

(d)    Arguing undue prejudice, the EEOC asks the Court to exclude Dr. Bursztajn's opinions to the extent that they bear on whether Mr. Lescault was a malingerer and Mr. Lescault's reliability as an informant because these are credibility determinations that must be made by a fact finder.

---

[3] DSM-5 is the Diagnostic and Statistical Manual of Mental Disorders, (5th ed. 2013).

I address each in turn.

### A.      Use of MCMI-III and its Interpretative Report

The EEOC has launched a blunderbuss challenge targeting the psychological test – the MCMI-III – that Dr. Bursztajn used as part of his evaluation.  First, the EEOC contends that Dr. Bursztajn was unqualified to administer the MCMI-III.  Second, it argues that the MCMI-III is so unreliable in general and as applied to Mr. Lescault that the entire Bursztajn Report and all of Dr. Bursztajn's opinions should be excluded.  Relatedly, the EEOC contends that the MCM Interpretative Report[4] that Dr. Bursztajn used to analyze the convergent validity of his test and examination data is scientifically unreliable.  The EEOC further asserts that Dr. Bursztajn excessively relied on the MCMI-III and its Interpretative Report, resulting in the irrelevant and prejudicial opinion that Mr. Lescault did not suffer from a neuropsychiatric impairment but rather that he had a personality dysfunction that may have caused anxiety but did not adversely impact his ability to talk to Citizens' customers.

Regarding Dr. Bursztajn's qualifications for administering the MCMI-III, Citizens accurately points out (and the EEOC does not controvert) that he has been a practicing, board-certified clinical and forensic psychiatrist for more that forty years and that he has graduate training in psychodiagnostics assessment, which qualifies him to administer the MCMI-III.  See Robert J. Craig, Millon Clinical Multiaxial Inventory–III: Use in Forensic Settings, 176 (2d ed.

---

[4] The MCMI-III Interpretative Report (ECF No. 69-7) is a computer-generated narrative report created by Pearson Assessments, the test provider and scorer, based solely on the scores provided by Mr. Lescault.  ECF Nos. 69-1 at 3; 69-2 at 9, 56.  Thus, the MCMI-III Interpretative Report is developed independently of Dr. Bursztajn's professional analysis, which was formed in reliance on his interview, objective observations and the answers to the MCMI-III questions.  As the Interpretative Report makes clear, it "cannot be considered definitive . . . [,] should be evaluated in conjunction with additional clinical data . . . [and] should be evaluated by a mental health clinician trained in the use of psychological testing."  ECF No. 69-7 at 2.  And that is exactly what Dr. Bursztajn did with it.  ECF No. 69-1 at 3.

2013) (ECF No. 72-7 at 3) ("Graduate training in psychodiagnostic assessment is required for test interpretation").  Dr. Bursztajn confirmed during his deposition that he chose the MCMI-III because "[i]t's the version that I've been most familiar with administering over time."  ECF No. 69-2 at 13.  Regarding the depth of his experience with the MCMI-III, Dr. Bursztajn testified:

> Q. How many times have you administered the MCM-III?
>
> A. Oh, if I was to say a hundred times, I think that might be, again, an underestimate.
>
> Q. And were all of those in your work as a – as an expert?
>
> A. No.  I use it clinically as well.  I still use it clinically.
>
> Q. Of the – of the roughly a hundred, how many times have you used it clinically?
>
> A. I would say it's about half and half.  Yeah, 50/50.  Yeah.

Id. at 14.

In the face of this evidence, the EEOC's contention that Dr. Bursztajn was unqualified falls flat.  The EEOC appears to rest this argument on Dr. Bursztajn's inability to explain the algorithm that Pearson Assessments, the provider and scorer of the instrument, uses to create the computer-generated Interpretative Report analyzing the examinee's responses.  However, there is nothing in the record to suggest that a mental health clinician must deeply understand the algorithm to be qualified to use the instrument as part of a forensic evaluation.  As the Court has already ruled with respect to Dr. Bursztajn's general credentials to administer psychological testing as part of a forensic assessment, ECF No. 47 at 18, I find that Dr. Bursztajn is well qualified by credentials and experience to use the MCMI-III and its Interpretative Report in developing his opinions for this case.

As to the reliability of the MCMI-III itself as used in this context, the EEOC misconstrues Dr. Bursztajn's approach, which involved the assessment of the MCMI-III data

(consistent with the test's guidelines), alongside other sources of data, including Dr. Bursztajn's observations and findings based on the clinical interview and other facts developed from his record review – that is, he evaluated the MCMI-III data "in conjunction with other clinical data." ECF No. 69-7 at 2.  This constitutes a multi-source approach, referred to as "convergent validity," which is well accepted as a reliable method for developing psychological opinions. See, e.g., Commonwealth v. DeJesus, 58 A.3d 62, 74 (Pa. 2012) (clinical psychologist testifies based on "convergent validity" of various data sources); United States v. Armstrong, No. 1:07-cr-26-SJM, 2009 WL 2880933, at *9 (W.D. Pa. Sept. 8, 2009) (clinical/forensic psychologist relied on "strong, convergent validity" of various source data, including observations and clinical interview, for diagnosis of bipolar illness), aff'd sub nom. United States v. Diehl-Armstrong, 504 F. App'x 152 (3d Cir. 2012).

The EEOC's arguments to the contrary are buttressed by peer reviewed articles and cases that do not support the propositions for which the EEOC cites them.  By way of example, the EEOC cites James N. Bow, *et al*., MMPI-2 and MCMI-III in Forensic Evaluations: A Survey of Psychologists, 10 Journal of Forensic Psychology Practice 37 (2010) (ECF No. 69-4), as stating that the MCMI-III is intended to be used only with its "normative population," which the EEOC argues are adults seeking mental health treatment, and is inherently unreliable in the forensic setting.  ECF No. 69 at 4.  This is simply inaccurate – in fact this article states that "[t]he current version, MCMI-III is commonly used in forensic evaluations . . . [;] studies have indicated that the MCMI II/III is the second-most commonly used objective instrument in both civil and criminal evaluations."  MMPI-2 and MCMI-III in Forensic Evaluations: A Survey of Psychologists, 10 Journal of Forensic Psychology Practice at 38 (ECF No. 69-4 at 2) (emphasis added).  And far from recommending that such usage is inappropriate and unreliable, the article

concludes with recommendations for how most reliably to use the MCMI-III.  Id. at 50-51 (ECF No. 69-4 at 14-15); accord, Robert P. Archer, et al., Introduction To Forensic Uses Of Clinical Assessment Instruments, 7 (2d ed. 2013) (ECF No. 72-1 at 8) (MCMI-III is "commonly used in forensic assessment, and a growing body of research literature is providing guidance and support for using clinical instruments in a forensic context . . . . such tests have become widely accepted for use in forensic evaluations").

     At best, the EEOC's citation to the literature establishes only that there has been extensive study of and debate regarding the use of the MCMI-III for forensic evaluations.  E.g., compare Frank J. Dyer, et al., The Millon Clinical Inventories, Research Critical of Their Forensic Application, and Daubert Criteria, 24 Law & Human Behavior 487, 490 (2000) (ECF No. 72-5 at 5) (MCMI-III "provides very useful data that can inform consideration of forensically related issues"), with Richard Rogers et al., Validation of the Millon Clinical Multiaxial Inventory for Axis II Disorders: Does It Meet the Daubert Standard?, 23 Law & Human Behavior 425, 438-39 (1999) (ECF No. 69-8 at 15-16) ("The MCMI-III does not appear to reach Daubert's threshold for scientific validity with respect to criterion-related or construct validity. . . . [W]e respectfully differ from [] declarations about the wide applicability of the MCMI-II to . . . civil forensic issues.").  The consensus of this ongoing debate appears to be that Dr. Bursztajn's nuanced use of the MCMI-III and its Interpretative Report in conjunction with other sources of data remains a well-accepted and reliable method for performing a forensic psychiatric/psychological evaluation.  See Edle Ravndal, et al., The Millon Clinical Multiaxial Inventory II: Stability over Time? A Seven-Year Follow-Up Study of Substance Abusers in Treatment, 16 European Addiction Research 146 (2010) (ECF No. 72-6 at 7) ("good reliability and stability of the MCMI-II dimensional scores indicate that the MCMI-II may be useful in

constructing a multi-dimensional, diagnostic system for personality disorder"); James Schutte,

Using the MCMI-III In Forensic Evaluations, 19 Am. J. of Forensic Psychology 5, 11 (2001)

(ECF No. 72-3 at 6) ("it is clear that [MCMI-III] has usefulness in forensic evaluations in which

assessment of abnormal personality and other psychopathology is the goal . . . .  Appropriate

civil litigation applications would include independent . . . neuropsychological evaluations").

The cases the EEOC marshals are similarly unavailing.  For example, the EEOC cites

Karahodzic v. JBS Carriers Inc., Case No. 12-cv-1040-DRH, 2015 WL 11181973, at *3 (S.D. Ill.

Apr. 27, 2015), for the proposition that the MCMI-III is so unreliable that it cannot withstand

Daubert scrutiny.  This is not correct – Karahodzic does not hold that the MCMI-III is inherently

unreliable.  Rather, Karahodzic not only deals with a different psychological test but also

excludes the report in the specific circumstances of that case because the test subject could not

speak or read English well enough to understand the questions.  Id.  (Minnesota Multiphasic

Personality Inventory "is an inappropriate test for a non-English speaking person").  No such

problem tainted Dr. Bursztajn's use of the MCMI-III.  Equally off-base is the EEOC's citation of

People v. Dobek, which endorses the MCMI version used as "general[ly] valid[] and accept[ed],"

holding only that its use "to actually identify sex offenders was not sufficiently supported by the

data."  732 N.W.2d 546, 571 (Mich. Ct. App. 2007).

The EEOC's third MCMI-III challenge focuses on what it contends is Dr. Bursztajn's

excessive reliance on the test, resulting in the alleged irrelevant and prejudicial opinion that Mr.

Lescault's personality dysfunction was the underlying cause of Mr. Lescault's anxiety symptoms

and does not qualify as an ADA disability impacting his ability to speak on the telephone.

Relatedly, the EEOC contends that Dr. Bursztajn's opinion improperly includes an analysis of

the "cause" of Mr. Lescault's symptoms, which is irrelevant to whether the symptoms

themselves were disabling resulting in the need for specific reasonable accommodation to permit Mr. Lescault to continue to work.

The EEOC's Daubert argument that Dr. Bursztajn excessively relied on the MCMI-III makes no sense – his testimony is clear that he spent only forty-five minutes of the evaluation administering the MCMI-III, while the clinical interview portion of the evaluation took over an hour.  ECF No. 69-2 at 8, 12.  Dr. Bursztajn's Report clearly describes his reliance on data from all of the sources listed and the EEOC points to nothing to plausibly support its charge that this is not what Dr. Bursztajn did.  Dr. Bursztajn's testimony confirms this methodology.  ECF No. 69-2 at 22 ("[The] Pearson report is basically consistent with all the other data that I reviewed and analyzed.  It's . . . a piece of the puzzle.  It's not the whole puzzle, but it's a piece of the puzzle that fits in with every other piece I've analyzed to . . . date.").  At most, the EEOC raises arguments about Dr. Bursztajn's methodology that could be fodder for cross examination (such as whether he placed too much weight on the MCMI-III or his failure to review and consider Mr. Lescault's Citizens performance reviews as evidence contradicting the Interpretative Report).  However, I find nothing *per se* disqualifying where Citizens has established that Dr. Bursztajn is a well-trained and highly experienced psychiatrist who relied on the second most commonly used instrument to perform a forensic neuropsychiatric examination.  MMPI-2 and MCMI-III in Forensic Evaluations: A Survey of Psychologists, 10 Journal of Forensic Psychology Practice at 38 (ECF No. 69-4 at 2); see Paine ex rel. Eilman v. Johnson, No. 06 C 3173, 2010 WL 785387, at *2 (N.D. Ill. Feb. 26, 2010) ("trained and experienced psychiatrist . . . appears well-qualified to determine whether an individual's mental state at a particular point in time negatively affected [his] ability to conduct major life activities").

Finally, the EEOC asks the Court to exclude Dr. Bursztajn's opinion because its conclusions are not relevant.  Further, in light of what the EEOC labels as its marginal relevance, the EEOC contends that the MCMI-III, and Dr. Bursztajn's opinion based on it, which contains a list of seemingly unsavory personality traits, is unduly prejudicial and should be excluded pursuant to Fed. R. Evid. 403.  To support this argument, the EEOC twists Dr. Bursztajn's findings into an irrelevant analysis of the "cause" of Mr. Lescault's difficulties, rather than a frontal assault on what the EEOC alleges are his disabling symptoms.

In its essence, based on the totality of the data he reviewed, including the MCMI-III and its Interpretative Report as a validity check, Dr. Bursztajn's opinion is that Mr. Lescault was not suffering from an anxiety disorder or any other neuropsychiatric impairment that resulted in the disabling symptom of being unable to talk to customers on the telephone; this opinion goes to the very core of an essential element of the EEOC's claim.  ECF No. 69-1 at 15.  Instead, Dr. Bursztajn concluded that "the anxiety Mr. Lescault experienced while working at Citizens Bank was a manifestation of personality and interpersonal adjustment issues in the workplace" and "does not constitute a psychiatric impairment that prevented or adversely impacted his ability to talk on the phone with customers."  Id. at 16.  Thus, I find that Dr. Bursztajn's Report is laser-focused on what is in issue – whether Mr. Lescault was disabled by the anxiety symptoms on which the EEOC relies.  I further find that Dr. Bursztajn did not improperly shift his focus to what would be the irrelevant underlying causes of Mr. Lescault's alleged mental condition and related symptoms.  See Shank v. Carleton Coll., File No. 16-cv-01154 (ECT/HB), 2019 WL 3974091, at *16-17 (D. Minn. Aug. 22, 2019) ("cause of her disability is irrelevant – what matters is whether she is disabled"), aff'd, 993 F.3d 567 (8th Cir. 2021); Paine ex rel. Eilman, 2010 WL 785387, at *4 (whether brain injury from car accident is underlying cause of

psychiatric disability is not relevant). And because Dr. Bursztajn's opinion is so squarely relevant to the pivotal issue in this case, I do not find that Dr. Bursztajn's naming of the personality traits in question to explain his opinion is so unduly prejudicial pursuant to Fed. R. Evid. 403 as to require exclusion of the Report.[5]  See, e.g., Donley v. Vill. of Yorkville, New York, 6:14-CV-1324 (MAD/ATB), 2019 WL 3817054, at *5 (N.D.N.Y. Aug. 13, 2019) (expert's findings that claimant exhibited personality traits, including narcissism, a sense of entitlement, a sense of projective power, lack of self-awareness, and diminished self-monitoring ability, which traits were not symptomatic of any mental, psychological, or emotional disorder, supports finding of no disability); Santiago v. City of Vineland, 107 F. Supp. 2d 512, 550 (D.N.J. 2000) (based on psychological report, court finds "personality structure which would be detrimental" but not severe enough to rise to the level of ADA impairment); see also Watson v. City of Miami Beach, 177 F.3d 932, 935 (11th Cir. 1999) (traits such as "paranoid," "disgruntled," "oppositional," "difficult to interact with," "unusual," "suspicious," "threatening," and "distrustful" do not rise to level of mental impairment under ADA; summary judgment granted in favor of employer).

### B.  Interview Methodology

The EEOC challenges the reliability of Dr. Bursztajn's clinical interview because he discarded his questions, did not contemporaneously record the answers and otherwise kept no

---

[5] Somewhat jarring is the EEOC's reliance for its Fed. R. Evid. 403 argument on Intell. Ventures II LLC v. FedEx Corp., Civil Action No. 2:16-CV-00980-JRG, 2018 WL 10638138 (E.D. Tex. Apr. 26, 2018).  Intell. Ventures II LLC is a patent case between commercial entities is which the court, inter alia, excluded evidence and arguments concerning any other unrelated legal proceedings or the use of term "litigious."  Id. at *1-2.  It is not supportive of the EEOC's contention that a psychiatric expert opining to personality dysfunction may not use the clinical terms for the personality traits in issue.  Nor is the Court persuaded by the EEOC's reliance on Old Chief v. United States, 519 U.S. 172 (1997), which is a case addressing the admission what evidence is sufficient regarding the prior felony conviction to prove the criminal charge of being a felon in possession of a firearm.

record (such as a video/audio recording) of its precise content.[6]  The EEOC also attacks Dr.

Bursztajn's Report as unreliable because the clinical interview was retrospective, with a time gap

of nearly four years between Mr. Lescault's February/March 2018 diagnosis of disabling anxiety

and the November 15, 2021, Rule 35 examination.  And because the interview was allegedly

tainted by what the EEOC labels as the "unpermitted, unexpected, undisclosed, and upsetting

presence of others during the . . . examination," the EEOC asks that it be excluded.  ECF No. 69

at 1.  These arguments largely duplicate several of the arguments underpinning the EEOC's

unsuccessful effort to block the Rule 35 examination and to have it excluded as a sanction.

Based on the same reasoning, I again reject them.

In its decision ordering that the Rule 35 examination must proceed under specified

conditions, the Court considered the evidence presented, including Citizens' proffer of a

declaration from Dr. Bursztajn about his proposed methodology, and specifically ruled that "no

audio or video recording may be created of the examination"; the EEOC did not ask that Dr.

Bursztajn be directed to preserve his questions and Mr. Lescault's answers in any other format.

ECF No. 47 at 18-19.  Further, based on the EEOC's submissions, the Court revisited and

reaffirmed this determination in denying the EEOC's motion for sanctions.  EEOC, 2022 WL

2785987, at *2 n.2 (EEOC submission "confirms the appropriateness of Dr. Bursztajn's request

that the Court order that audio and video recording may not be conducted").  And the EEOC's

cases cited in support of this argument do not support its position.  See, e.g., Alvarado v. Shipley

Donut Flour & Supply Co., Civil Action No. H-06-2113, 2007 WL 4480134, at *4-7 (S.D. Tex.

Dec. 18, 2007) (excluding expert opinion that ignored diagnostic criteria and was not based on

---

[6] Because it is a standardized instrument, there is a record of the MCMI-III questions, while the Interpretative Report reflects the "item responses."  See ECF No. 69-7 at 11.

any published instruments, but rather solely on examiner's personal experience).  As another court assessing Dr. Bursztajn's methods has held:

> The methods by which Dr. Bursztajn conducted his psychiatric evaluation are widely, if not universally accepted, as appropriate.  The [] tests, as but a small component of the entire assessment, are also widely if not universally accepted.  On this, there is no dispute. The plaintiff takes issue with the procedure followed by Dr. Bursztajn in using these standardized tests.  The plaintiff essentially challenges the reliability of these tests under the unique circumstances presented here.  The court is of the view that this challenge to Dr. Bursztajn's conclusions is a challenge appropriately made through cross-examination.

Panchenkova v. Chigirinsky, No. X10UWYCV126020818, 2014 WL 12585707, at *1 (Conn. Super. Ct. Aug. 25, 2014).  I concur; I find that the EEOC has waived this argument as a *per se* challenge to Dr. Bursztajn's methodology.  In any event, I find that it is not a reason for a Daubert order of exclusion.  See AAPL Practice Guideline for the Forensic Assessment, 43 J. of Amer. Academy of Psychiatry and Law, S13 (2015 Supp.) (ECF No. 69-11 at 4) ("There is a debate over recording interviews.").  Rather, with an appropriate foundation (such as Mr. Lescault's differing recollection of what he was asked or what he said), the EEOC may explore the reliability of the Report based on the interview during cross examination.

Unlike preservation of the questions/answers, in seeking to block the Rule 35 examination, the EEOC argued vehemently that a retrospective interview, following a delay of over three years, is so inherently unreliable that the Court should bar Citizens from conducting any examination of Mr. Lescault.  This argument was soundly rejected by the Court.  ECF No. 47 at 17, 19 n.17 (delay of more than three years no impediment to finding of good cause for forensic Rule 35 examination) (citing EEOC v. L-3 Commc'ns Integrated Sys., Civil Action No. 3:17-CV-0538-N, 2018 WL 3548870, at *2 (N.D. Tex. July 24, 2018)).  During his deposition, the EEOC's expert, Dr. Matthew Lahaie, conceded that such retrospective analyses are commonplace in the forensic context and can be performed reliably.  ECF No. 69-19 at 25-28;

see Burgess-Lester v. Ford Motor Co., Civil Action No. 1:06CV43, 2007 WL 2463264, at *1

(N.D. W.Va. Aug. 27, 2007) ("[r]etrospective clinical evaluations of mental states are performed

regularly, finding general acceptability in the psychiatric and psychological community")

(internal quotation marks omitted).[7]  I do not find that the retrospective nature of Dr. Bursztajn's

expert analysis is a reason to exclude it.

The EEOC's final argument in support of its contention that the Lescault interview

provides unreliable support for Dr. Bursztajn's opinions – because Mr. Lescault was distressed

by the presence of someone else in the room with Dr. Bursztajn – was also the foundation for the

EEOC's unsuccessful motion for the sanction of preclusion.  In its decision, the Court held:

> Based on my findings in reliance on the facts presented by the parties and on my interpretation of the "meaning and intendment" of my Order, I find that, during the Fed. R. Civ. P. 35 examination, Dr. Bursztajn acted consistently with his reasonable interpretation of the Court's Order, as well as with his professional opinion regarding best practice for performing the Court-ordered examination, particularly for ensuring the accuracy of the subject's test answers. . . .  At worst, I find that there may have been confusion arising from the unintended ambiguity. . . . I do not find that this potential for confusion "tainted" the examination as the EEOC argues.  Rather, I find that any potential for confusion may readily be addressed at trial.  That is, Mr. Lescault may testify that, despite the pre-examination advisory that there would be a transcriptionist in the room, he did not understand and was on edge because of his suspicion about a person in the room.  Similarly, Dr. Bursztajn can be cross examined . . . about the impact of Mr. Lescault's potentially well-founded suspicion about a person in the room on his professional opinions.

EEOC, 2022 WL 2785987, at *5 (internal citations omitted) (emphasis added).  The EEOC's

Daubert motion has provided no reason for the Court to alter this determination.

---

[7] The Court may give short shrift to the EEOC's argument that the entire Report is unreliable because Dr. Bursztajn did not ask Mr. Lescault directly about his symptoms of anxiety, which were already well developed in the record on which Dr. Bursztajn relied.  The EEOC's only citation to support the argument does not hold that a forensic clinical interview is per se unreliable unless such specific questions are asked.  To the contrary, Munafo v. Metro. Transp. Auth., Nos. 98-CV-4572 (ERK), 00-CV-0134 (ERK), 2003 WL 21799913 (E.D.N.Y. Jan. 22, 2003), holds that a psychopharmacologist's testimony on causation was unreliable because he did not even attempt to perform a differential diagnosis as to the cause of alleged depression, leaving the expert unaware of significant events and emotional traumas in the claimant's recent past.  Id. at *17-19.  I urge the Court to disregard this argument as a Daubert-based reason to exclude Dr. Bursztajn's opinions.

I recommend that the Court reject the EEOC's argument that Dr. Bursztajn's interview methodology so undermined its reliability as to require Daubert exclusion.

### C.       Critique of Treating Sources

The EEOC argues that Dr. Bursztajn should not be allowed to testify because his opinions misleadingly and prejudicially suggest that an ADA diagnosis can be made only by a forensic psychiatrist in consideration of the pertinent diagnostic criteria in DSM-5.  Relatedly, the EEOC asks the Court to exclude Dr. Bursztajn's opinions as irrelevant and prejudicial because whether the DSM-5 criteria for a disabling psychiatric diagnosis were met at the time that Mr. Lescault's treating sources diagnosed anxiety disorder that adversely impacted his ability to speak on the telephone with customers is not relevant to whether he suffered from a disability pursuant to ADA.

The first prong of this argument rests on a proposition that is simply wrong.  There is nothing in Dr. Bursztajn's opinions that suggests or implies that only a forensic psychiatrist can diagnose anxiety disorder as a disabling impairment.  Rather, Dr. Bursztajn has criticized Mr. Lescault's treating sources, for example, based on their reliance on a DSM-based diagnosis while disregarding the DSM-5 durational criterion of six months of symptoms, which clashes with Mr. Lescault's having had symptoms for just four months.  See DSM-5 300.02 (F41.1) (ECF No. 69-17 at 3) (diagnostic criteria for generalized anxiety disorder requires "excessive anxiety and worry . . . occurring more days than not for at least six months," with at least three symptoms (e.g., fatigue, difficulty concentrating, sleep disturbance) "present for more days than not for the past 6 months").  As Dr. Bursztajn explained during his deposition:

> Generalized anxiety disorder is a disorder which needs to at least occur over a period of six months with predominant affect is one of anxiety and the anxiety is excessive relative to any potential stressors which may be there. . . . There was the fact that he recovered so quickly within four months.  Again, that would make it

very unusual for someone who has predominant periods of anxiety for most of the time, and especially excessive anxiety. . . . [T]he idea that he had anxiety for most of the time over four months and then all of a sudden he's all better, you know, I've just never seen it in my clinical practice.  You know, it's – human beings just don't work that way.

ECF 69-2 at 22-23; see also ECF No. 69-1 at 13-15 (Dr. Bursztajn's Report criticizes Mr. Lescault's treating sources for their excessive reliance on his subjective statements in lieu of objective clinical observations, as well as their reliance on subjective statements that were inconsistent with objective clinical observations).  Further, the EEOC's own guidance confirms that the criteria in DSM-5 can be relevant.[8]

Nevertheless, the EEOC is right that the ADA does not mandate that individuals must fit a preapproved list of diagnosed conditions to come within its definition of disability.  See Crosby v. F.W. Webb, Co., Civil No. 2:12-cv-135-NT, 2014 WL 1268691, at *6-7 (D. Me. Mar. 26, 2014) (where plaintiff had seriously disabling symptoms of alcoholism and had relapsed and been hospitalized for depression with symptoms continuing for more than six months, claimant proffered enough for fact finder to find disability even though alcoholism is not per se disabling and despite lack of DSM-based diagnosis of depression).  The problem is that Mr. Lescault's treating providers relied on a DSM-based diagnosis to find that his aversion to talking on the telephone was not a preference but rather was a medical symptom of a disabling mental impairment.  Therefore, Dr. Bursztajn's critique of this reliance is squarely relevant, is not prejudicial and should not be excluded.  Indeed, it is perfectly appropriate for an expert to disagree with the clinical assessment performed by a treating professional.  Consistent with this

---

[8] The EEOC's guidance states that "the current edition of the" DSM "is relevant for identifying" qualifying mental impairments under the ADA.  U.S. Equal Emp't Opportunity Comm'n, EEOC Enforcement Guidance on The Americans with Disabilities Act and Psychiatric Disabilities, EEOC Notice No. 915.002, 1997 WL 34622315 (March 15, 1997).

proposition, the EEOC itself has proffered the professional opinion of its own expert, Dr. Lahaie, whose report is critical of Dr. Bursztajn's methodology and findings.  Dr. Bursztajn's opinions should not be excluded based on this argument.

### D.    Opinions Bearing on Credibility

The EEOC's final <u>Daubert</u> argument is based on its contention that some of Dr. Bursztajn's clinical observation are actually non-medical attacks on Mr. Lescault's credibility, invading the province of the jury and presenting serious danger of prejudice.  To support the argument, the EEOC relies on Dr. Bursztajn's testimony that he did not make an explicit finding of malingering, while ignoring Dr. Bursztajn's explanation for his approach: "once I found that he wasn't suffering from . . . any psychiatric disorder, there was no need to proceed with a filtered analysis."[9]  ECF No. 69-2 at 61.  Relatedly, the EEOC labels Dr. Bursztajn's professional judgment that Mr. Lescault appeared to be an unreliable informant and suffered from various personality traits – for example, grandiosity that impacted his reliability as an informant – as an improper credibility determination.  I disagree – as Dr. Bursztajn confirmed during his deposition, his Report and testimony does not label Mr. Lescault as a liar but rather sets out Dr. Bursztajn's professional opinions.  ECF No. 69-2 at 57 ("misrepresenting your symptoms, your degree of impairment and misattributing the causes . . . of your suffering, but it doesn't mean that you lied").  As it did during his deposition, the EEOC may cross examine Dr. Bursztajn to undermine these findings. There is nothing *per se* improper or so inappropriately prejudicial about these opinions as to require that Dr. Bursztajn is precluded from testifying.[10]

---

[9] That is, Dr. Bursztajn did not rule out malingering; indeed, he noted data suggesting that it might be present: "Is there some evidence of motivation for secondary gain? . . . Yeah, there was some evidence for that."  ECF No. 69-2 at 34.

[10] This <u>Daubert</u> recommendation is not intended to bar the EEOC from requesting a cautionary instruction or other protection from potential prejudice arising from the diagnostic terms used in the Bursztajn's Report during trial.

Mindful that exclusion under Rule 403 is "extraordinary and to be invoked sparingly," Rivera-Marrero, 255 F. Supp. 3d at 293 (internal quotation marks omitted), I recommend that the EEOC's Daubert motion to exclude Dr. Bursztajn's opinions on this basis should be denied.

## IV.   Conclusion

Based on the foregoing, I recommend that the EEOC's Daubert motion for to exclude the testimony of Dr. Bursztajn (ECF No. 69) be denied.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 10, 2023